IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Go Airlines (India) Limited,<br><br>*Petitioner*,<br><br>v.<br><br>International Aero Engines, LLC, a Delaware Limited Liability Companyi<br><br>*Respondent*. | Misc. Case No. _____ |

## DECLARATION OF KABIR BHALLA

Pursuant to 28 U.S.C. § 1746, I, Kabir Bhalla, declare as follows:

1. I am an attorney of law and am admitted to practice in England and Wales. I am a senior associate at King & Spalding International LLP and am counsel to Petitioner Go Airlines (India) Limited ("**GoFirst**") in these proceedings against Respondent International Aero Engines, LLC ("**Pratt & Whitney**" or "**Pratt**" and, together with GoFirst, the "**Parties**").

2. I am over the age of 18 and make this declaration from personal knowledge based on information reviewed and/or referenced herein.

3. This declaration is provided in support of GoFirst's Emergency Petition and Motion to confirm and recognize the Award on the Claimant's Application for Emergency Interim Relief rendered on March 30, 2023 (the "**Award**," a true and correct copy of which is attached as **Exhibit A** hereto) and the Award on the Claimant's Application for Supplemental Emergency Interim Relief rendered on April 15, 2023 (the "**Supplemental Award**," a true and correct copy of which is attached as **Exhibit B** hereto) (together the "**Awards**") in emergency proceedings (the

"**Emergency Arbitration**") between GoFirst and Pratt under the Arbitration Rules of the Singapore International Arbitration Centre 2016 ("**SIAC**"), pursuant to the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–08.

4. The Emergency Arbitration was brought by GoFirst pursuant to the arbitration agreements in: (i) Clause 14 of Appendix 21 to the Engine Agreement dated February 14, 2012 as amended by a side letter agreement dated February 14, 2012 (attached hereto as **Exhibit C**); (ii) Clause 14 of Attachment 10 to the Fleet Management Program Agreement dated February 14, 2012 as amended (attached hereto as **Exhibit D**); (iii) Clause 5 of the Binding Memorandum of Understanding between GoFirst and Pratt dated November 12, 2019 (attached hereto as **Exhibit E**); and (iv) Clause 8 of the Letter Agreement regarding Pre-Payment and Subsequent Reconciliation of AOG and Engine Change Support for First Quarter 2020 dated February 3, 2020 (attached hereto as **Exhibit F**). Pratt did not contest the jurisdiction in the Emergency Arbitration nor did it contest the arbitrability of GoFirst's claims.

I. **PRATT HAS FAILED TO COMPLY WITH THE AWARD**

5. Attached hereto as **Exhibits A and B** are duly certified copies of the Award and Supplemental Award.

6. Paragraph 12 of Schedule 1 of the SIAC Arbitration Rules 2016, which are incorporated by reference into the Parties' contracts discussed above, *supra* ¶ 4, confirms that the Awards are binding from the date they are made and are to be carried out immediately and without delay:

> The parties agree that an order or Award by an Emergency Arbitrator pursuant to this Schedule 1 shall be binding on the parties from the date it is made, and

undertake to carry out the interim order or Award immediately and without delay. The parties also irrevocably waive their rights to any form of appeal, review or recourse to any State court or other judicial authority with respect to such Award insofar as such waiver may be validly made.

**Exhibit G**.

7. On March 30, 2023, GoFirst's counsel wrote to Pratt's counsel, demanding that Pratt "undertake to GoFirst by no later than 6 pm Singapore time on 2 April 2023 that it will comply with the Award in full and without condition or caveat." Attached hereto as **Exhibit H** is a copy of the correspondence. To date, Pratt has not complied with the Award. On April 1, 2023, Pratt wrote to GoFirst, unequivocally representing that it "intend[ed] to comply with the Emergency Award until such time as it may be set aside or modified, and will also abide by the SIAC Rules." Attached hereto as **Exhibit I** is a copy of the correspondence.

8. On April 3, 2023, Pratt wrote to GoFirst recognizing that it was bound by the Award, but claiming that "no Spare Leased Engines are presently available from Pratt & Whitney or its affiliates," and stating that "although it is currently projected that a limited number of Spare Leased Engines will be released from MRO [maintenance, repair and overhaul] such that they will be in a serviceable condition, each of these Spare Leased Engines was already committed to other customers as of Q1 2023 before the date the Award was issued." With respect to the induction of GoFirst's own engines (rather than Spare Leased Engines, of which the Award requires the supply of 10 per month until December 2023), Pratt explained that one engine was delivered on March 28, 2023 and that another two engines would be shipped to GoFirst by May 25, 2023. Attached hereto as **Exhibit J** is a copy of the letter.

9. GoFirst responded to Pratt's April 3, 2023 letter on April 6, 2023, expressing its deep disappointment and warning Pratt that it was not in compliance with the Award. Specifically, GoFirst noted that the Award mandates that Pratt supply at least 10 Spare Leased Engines to

3

GoFirst by April 27, 2023, and requested further information from Pratt as to what other steps it would be taking to facilitate GoFirst's "financial rehabilitation," Award ¶ 212, and comply with the Emergency Arbitrator's other orders. GoFirst reiterated that the Award also obliges Pratt to: (i) deliver to GoFirst 10 Spare Leased Engines per month until December 2023; (ii) repair and return to GoFirst the 17 GTF[1] and Spare Leased Engines already in Pratt's possession; and (iii) induct the 44 GTF and Spare Leased Engines that remain in GoFirst's possession and that are presently unusable due to defects. GoFirst reasonably asked Pratt to explain how it would be complying with these obligations, including by providing a schedule setting forth the dates by which the remaining 17 GTF Engines already in Pratt's possession would be shipped back to GoFirst and the 44 GTF and Spare Leased Engines in GoFirst's possession would be picked up and inducted by Pratt into its shops for maintenance and repair. Attached hereto as **Exhibit K** is a copy of the letter.

10. Pratt replied to GoFirst's letter on April 7, 2023, making several extraordinary claims. First, Pratt simply "decline[d]" to provide GoFirst with any of the information it requested, justifying its refusal on the ground that the "Emergency Award does not require Pratt & Whitney to comply with the demands GoFirst has made." Second, Pratt baldly asserted that it was in compliance with the Award, and would "continue to keep GoFirst informed as necessary to continue complying with the Emergency Award." Third, Pratt's mere promise to GoFirst that it will make only three of its own engines available to GoFirst by the end of May 2023, and failure to supply any Spare Leased Engines whatsoever (either from PWEL, or from third party engine lessors), puts Pratt in breach of the Award. Attached hereto as **Exhibit L** is copy of this letter.

---

[1] GTF Engines are an engine family type designed and constructed by Pratt for the Airbus A320 neo family, Airbus A220, and Embraer E-jets E2.

4

### C. The Supplemental Award Confirms the Orders in the Award

11. As a result of Pratt's failure to comply with the Award, GoFirst submitted an Application for Supplemental Emergency Interim Relief, requesting *inter alia* that the Emergency Arbitrator "[c]onfirm[] that Pratt is to comply with its obligations under paragraph 213(a) and (b) of the Award to provide 'at least' 10 serviceable Engines within 28 days from the Award, and 10 Engines per month thereafter until December 2023." Supplemental Award, ¶¶ 2, 4. On April 15, 2023, the Emergency Arbitrator rendered the Supplemental Award, which confirmed the orders given in the Award and ordered Pratt to "consider [the] steps and the comments . . . made in paragraphs 11 to 13 [of the Supplemental Award] in determining how to comply with the Emergency Award orders," (*Id.* ¶ 15) including that the orders in the Award may (and in GoFirst's submission, must) "require Pratt & Whitney to subordinate its commercial interests which could mean placing GoFirst ahead of other customers." *Id.* ¶ 11. In addition, it stated that Pratt "may have to arrange for GoFirst to "jump the queue" to the extent that to do so would be a management decision and would not otherwise breach a contractual obligation to other customers." *Id.* ¶ 12.

12. The Supplemental Award further ordered Pratt to "give a full and detailed response to King & Spalding's letter of 6 April 2023 . . . by 22 April 2023" *Id.* ¶ 15, because the "provision of the information sought by GoFirst is important: it will enable GoFirst (and if necessary the Tribunal) to determine whether Pratt & Whitney is complying with paragraphs 213(a) and (b) of the . . . Award." Supplemental Award ¶¶ 12, 15. Pratt had not at that time differentiated between any customers to which it was under a contractual obligation to provide Spare Leased Engines and those for whom the allocation of Spare Leased Engines was a management or commercial decision.

13. Despite the clear orders of the Emergency Arbitrator in the Award and the Supplemental Award, Pratt has acted in continued defiance of those Awards. On April 22, 2023, Pratt provided its response to GoFirst's letter of April 6, 2023, which simply continued the theme

of Pratt's noncompliance with the Awards. Pratt—despite professing that it "reaffirm[ed] its compliance with the . . . Award, as clarified by the terms of the Supplemental Award"—confirmed that it could only commit to the supply to GoFirst three GTF Engines by the end of May 2023. Moreover, and most importantly, Pratt confirmed that it is unwilling to supply any Spare Leased Engines to GoFirst, let alone the "at least" 10 that the Award ordered be provided to it by April 27, 2023 or the further 10 per month until December 2023. Tellingly, Pratt failed to identify any contractual obligations with third parties that could be capable of overriding its management or commercial discretion to provide Spare Leased Engines in priority to GoFirst pursuant to the Awards. Attached hereto as **Exhibit M** is a copy of the letter.

## II. GOFIRST FACES IMMINENT BANKRUPTCY IF PRATT DOES NOT IMMEDIATELY COMPLY WITH THE AWARDS

14. GoFirst is in dire need. There is a real risk that GoFirst will suffer irreparable harm and be forced be declare bankruptcy if Pratt does not immediately comply with the Awards.

15. GoFirst requires a minimum of 103 engines from Pratt for normal operations, yet only around 56 are currently serviceable. Award ¶¶ 188–89. The non-availability of engines from Pratt has led to a profound decline in operating revenue per aircraft per month (declining from $2.08 million in FY15 to $1.22 million in FY 23). *Id.* ¶ 45(a). Yet even though a very significant portion of its fleet is grounded and unable to generate revenue, GoFirst has still been obliged to pay 100% of its fixed costs, including lease rental payments to its lessors of over $200 million, aircraft maintenance charges, parking charges, and employee costs. *Id.* ¶¶ 188–89. GoFirst's EBITDA has dropped from +6% to -29.9% from FY15 to FY23. *Id.* ¶ 45(b). As a result, the non-availability of engines is posing an immediate, existential threat to the survival of GoFirst. *Id.* ¶ 198.

16. In the Emergency Arbitration, GoFirst submitted a witness statement from Mr. Nusli Wadia (GoFirst's Chairman Emeritus) and a witness statement from Mr. Varun Berry (GoFirst's Chairman). Attached hereto as **Exhibits N and O** are signed copies of the witness statements.

17. Mr. Wadia testified in his witness statement that "[w]ith only 55% of its First Batch Aircraft fleet in the air, and while it continues to incur 100% of its costs, GoFirst simply cannot generate the cashflow necessary to survive . . . GoFirst is fighting for its life, and it is running out of time." Ex. N ¶ 112. He elaborated that "[i]f [Pratt's] behaviour does not change, GoFirst simply will not be able to generate the operational revenue necessary for its survival, and its lessors (to the extent they have not done so already) will continue to put pressure on GoFirst until, eventually, they all will opt to call on their letters of credit and declare GoFirst to be in default, resulting in inevitable bankruptcy." *Id.* ¶ 118. He also explained that, as "engines are the lifeblood of any airline company," "Pratt's refusal to induct (and not even return to GoFirst) more than two to three Engines per month for the remainder of 2023 – a position Pratt first took in January 2023 and from which it has not wavered since – will starve GoFirst of that lifeblood and result in bankruptcy for GoFirst. GoFirst desperately and urgently needs [e]ngines, and cash compensation." *Id.* ¶ 120.

18. Mr. Wadia also attended the Emergency Hearing on March 25, 2023 and provided the following testimony in response to the Emergency Arbitrator's question:

> [W]e really require engines, in one sentence. We just require engines. If we get the engines, the quicker we get the engines, the quicker we recover and the quicker we recover, the better is the ability for us to sustain ourselves . . . .
>
> [R]ight now, we are losing $25 million a month. If we had the engines, we would be making $12 million a month. So it's a very big gap. Our turnover, our revenue would be in the order of 150. Currently, it's in the order of 64. That gap is 85 million. So if you look at the facts, I mean, our revenue is less than half. 85 million difference is huge. You are bearing 100 per cent of all our costs. I've got 57% of my pilots sitting on the ground and they're very expensive people. So I have

7

another threat also, to be absolutely candid with you, and that is that if . . . my pilots and others don't see relief coming, they will leave the airline. So if the relief comes too late, I won't have the pilots, I won't have the organisation. The organisation will fall apart. So the number of engines and the speed of that is critical for our existence for the next six months."

Award ¶ 190.

19. Mr. Berry similarly testified in his witness statement that "the Company needs large number of serviceable engines to be made available on an urgent basis to recover from the current crisis. Non-availability of engines is posing an immediate, existential threat to the survival of Company." Ex. O ¶ 20. Mr. Berry further elaborated that the serial failures of the engines have had serious implications for, and severely strained, GoFirst's relationship with its lessors in at least the following ways:

> First, because of its inability to generate the anticipated revenue as a result of the significant number of AOGs [i.e., aircraft on ground], GoFirst has fallen behind on its payments of rent and supplemental rent. *As at 31 January 2023, I am aware that that our overall outstanding liability to lessors was in the region of USD 278 million. (That number has risen since and continues to rise.)* To fully understand even this number, however, it must be set against the backdrop of GoFirst's inability to earn revenue from lessors' aircraft, while still being required to pay lease rental for those aircraft. *The sums involved are very significant: from April 2020 to March 2023, GoFirst's liability with respect to aircraft subject to AOGs is approximately USD 206.6 million.*
>
> Second, "Demand Notices", "Notices of Default" and "Grounding Notices" are increasing . . . *[T]he overall position is that GoFirst has received default notices for more than 30 aircraft, equivalent to more than 50% of its fleet. That number is only likely to increase in the coming days.* In fact, as of 11 March 2023, out of a total of First Batch Aircraft lessors, 11 have issued demand notices, two have issued termination notices, and one has issued a grounding notice. The impact of the demand notices eventually will be the drawdown of letters of credit of approximately USD 161 million and the total operational shutdown of the airline because of the consequent grounding of First Batch Aircraft.
>
> Third, *lessors have begun to take the irremediable and highly prejudicial step of repossessing first batch aircraft*. Icelease, one of the lessors, repossessed two of the first batch aircraft in December 2022. GoFirst anticipates that the longer the issues with [IAE's] Engines continue without satisfactory and urgent relief, the more lessors will consider taking similar steps.

> Fourth, *lessors have begun to make calls on letters of credit*. The significance of this cannot be overstated: when bonds and letters of credit are called, that has a rapid knock-on effect on GoFirst's reputation with banks and lessors (and in the market generally), and potentially undermines GoFirst's ability to create new credit lines, and draw on or preserve existing credit lines. As at 6 March 2023, the total value of the ten letters of credit called on stands at USD 41.69 million, but GoFirst anticipates that – again, if nothing is done – that figure will increase.

*Id.* ¶ 52 (emphases added).

20. At the Emergency Hearing, Pratt decided to not cross-examine Messrs. Wadia and Berry, Award ¶ 190; did not challenge the substance of the "Snapshot Assessment" (on the current operational and financial health of GoFirst) prepared by Alvarez & Marsal (the international turnaround management firm) and relied upon by Mr. Wadia, *id.* ¶ 188, and ultimately by the Emergency Arbitrator, *id.* ¶ 189; and did not challenge, but instead relied on, GoFirst's dire financial situation in requesting that GoFirst provide a financial security, *id.* ¶¶ 167–72, 212.

21. Moreover, in the Award, the Emergency Arbitrator accepted GoFirst's argument that unless he ordered Pratt to comply with its contractual obligations in the short term, there "is a very real danger that GoFirst will go out of business." Award ¶ 198. The Emergency Arbitrator found that "[i]t is clear that GoFirst needs Engines *urgently* to reduce the AOGs [i.e., aircraft on ground] caused by the absence of serviceable replacement Engines for GoFirst's aircraft." *Id.* ¶ 200 (emphasis added). The Emergency Arbitrator further found that the provision of at least 10 Spare Leased Engines to GoFirst within 28 days of the Award (as well as a further 10 Spare Leased Engines per month to GoFirst through December 2023) was the "minimum relief" he considered "necessary to reduce GoFirst's AOGs" and save it from insolvency. *Id.* ¶ 201.

22. Finally, since the Awards were rendered, the financial and operational problems that plagued GoFirst have worsened. Currently, at least 28 of GoFirst's First Batch Aircraft (i.e., 57% of GoFirst's First Batch Aircraft, or 52% of GoFirst's total fleet) are grounded because

GoFirst does not have sufficient serviceable GTF Engines. Further, GoFirst's lessors either have repossessed or are now actively preparing to repossess a significant number of First Batch Aircraft, as set out in an article dated April 4, 2023 from CH-Aviation News, one of the primary aviation intelligence websites, and attached hereto as **Exhibit P**. The article explains that a "major lessor [Aercap] is reportedly threatening to recall aircraft placed at GoFirst" (amounting to four A320neos), and two other lessors are threatening to repossess a further six aircraft. *Id.* In fact, just last week GoFirst's lessors repossessed six of its serviceable aircraft. And its lessors are actively preparing to repossess more. If the lessors take the further action threatened, the result will be catastrophic for GoFirst. GoFirst's active fleet will be decimated, severely hindering GoFirst's ability to survive and all of the protection that the Awards intended to provide will have been for naught. GoFirst understands that lessors are aware of the existence of the Awards, but are nevertheless still considering seizing the aircraft based on Pratt's failure to comply with the terms of the Awards. As a result, this Court's confirmation and enforcement of the Awards is not only justified but also necessary to prevent irreparable harm to GoFirst.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: London, England
    April 28, 2023

                   _____
                       Kabir Bhalla