**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Go Airlines (India) Limited,<br><br>              Petitioner,<br><br>     v.<br><br>International Aero Engines, LLC,<br><br>              Respondent. | Misc. No. 1:23-mc-00249-RGA LDH |

**MEMORANDUM OF LAW IN OPPOSITION TO THE EMERGENCY PETITION AND**
<u>**MOTION TO CONFIRM ARBITRATION AWARDS**</u>

Dated:  May 11, 2023

OF COUNSEL:

REED SMITH LLP
Oliver K. Beiersdorf
James P. Duffy IV
Brian P. Giunta
599 Lexington Avenue
22nd Floor
New York, NY 10022
Telephone: (212) 521-5400
obeiersdorf@reedsmith.com
jpduffy@reedsmith.com
bgiunta@reedsmith.com

REED SMITH LLP
Brian M. Rostocki (No. 4599)
Anne M. Steadman (No. 6221)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
brostrocki@reedsmith.com
asteadman@reedsmith.com

*Counsel for Respondent International Aero Engines, LLC*

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................ 1

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 3

      A.      Background of the Underlying Dispute in the Arbitration ..................... 3

      B.      GoFirst Initiates Arbitration and Emergency Proceedings .................... 6

      C.      The Interim Award Grants Limited Relief to GoFirst ........................... 7

      D.      The Supplemental Award Rejected GoFirst's Attempts to Rewrite the Emergency Award ................................................................................. 9

      E.      GoFirst Files this Petition in Delaware and for Insolvency in India.................... 11

ARGUMENT ..................................................................................................... 12

I.      FAA CHAPTER 2 AND THE NEW YORK CONVENTION GOVERN THE PETITION ................................................................................................. 12

II.     ENFORCEMENT SHOULD BE STAYED WHILE THE MERITS TRIBUNAL CONSIDERS IAE'S APPLICATION TO VACATE THE AWARDS ......................... 14

      A.      Staying These Proceedings Is the Most Efficient and Economical Approach ................................................................................................. 16

      B.      The Status of the Merits Arbitration Favors a Stay ............................. 17

      C.      The Interim Awards Will be Reviewed De Novo on the Merits by the Full Merits Tribunal ..................................................................................... 18

      D.      A Full Merits Review in the Forum to Which GoFirst Contractually Agreed Is Completely Appropriate ...................................................................... 18

      E.      The Balance of Hardships Favors Staying These Proceedings............................. 19

III.    THE COURT SHOULD REFUSE CONFIRMATION OF THE INTERIM AWARDS ................................................................................................ 19

      A.      The Interim Awards are Not Final and Binding ................................... 20

      B.      Confirmation Would Violate the Public Policy of the United States .................. 27

             (i)      The Awards Violate the IAE's Fundamental Due Process Rights By Ordering Onerous Relief with No Assessment of Liability..................... 28

             (ii)     The Award Violates the Public Policy of Requiring Claimants to Bond Preliminary Relief ..................................................................... 31

      C.      The Awards Contain Decisions on Matters Beyond the Scope of the Arbitration ............................................................................................. 33

CONCLUSION................................................................................................................................... 34

## **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) ....................................................................................29

*In re ABC Learning Ctrs. Ltd.*,
   728 F.3d 301 (3d Cir. 2013)...........................................................................................28

*Al Raha Grp. for Tech. Servs. v. PKL Servs.*,
   No. 1:18-cv-04194-AT, 2019 U.S. Dist. LEXIS 156249 (N.D. Ga. Sep. 5,
   2019) ..............................................................................................................................25

*Am. Motor Inns, Inc. v. Holiday Inns, Inc.*,
   521 F.2d 1230 (3d Cir. 1975)........................................................................................24

*Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*,
   230 F. Supp. 2d 362 (S.D.N.Y. 2002)....................................................................13, 20

*Bauer v. Salandy*,
   No. 3:18-cv-01293, 2021 U.S. Dist. LEXIS 8356 (M.D. Tenn. Jan. 15, 2021) ....................28

*Berkenhoff VmbH v. Global Trade Network, Inc.*,
   No. 1:11-CV-00475, 2012 U.S. Dist. LEXIS 11579 (S.D. Ohio Jan. 31, 2012) ....................14

*Biotek Servs., LLC v. Docs of Conn., LLC*,                                      No.
   1:19-CV-01803-JPB, 2020 U.S. Dist. LEXIS 265525 (N.D. Ga. Jan. 17, 2020)...................23

*Blissett v. Coughlin*,
   66 F.3d 531 (2d Cir. 1995)............................................................................................28

*Caroleng Invs. Ltd. v. Bluestone Res., Inc.*,
   No. 1:20-cv-1793, 2021 U.S. Dist. LEXIS 86487 (D. Del. May 6, 2021)
   ...........................................................................................................14, 16, 17, 18

*Castillo v. Cmty. Child Care Council, Inc.*,
   No. 17-cv-07243, 2019 U.S. Dist. LEXIS 108163 (N.D. Cal. June 27, 2019)......................28

*Chinmax Med. Sys. v. Alere San Diego, Inc.*,
   No. 10cv2467 WQH (NLS), 2011 U.S. Dist. LEXIS 57889 (S.D. Cal. May 27,
   2011) ..............................................................................................................................25

*Clark v. K-Mart*,
   979 F.2d 965 (3d Cir. 1992)..........................................................................................32

*Coast Trading Co. v. Pac. Molasses Co.*,
   681 F.2d 1195 (9th Cir. 1982) ......................................................................................33

*Coca-Cola Bottling v. Teamsters Local*
    688, 959 F.2d 1438 (8th Cir. 1992) ...................................................................30

*Commonwealth Ins. Co. v. Underwriters, Inc.*,
    846 F.2d 196 (3d Cir. 1988)...............................................................................13

*Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*,
    832 F.3d 92 (2d Cir. 2016)..................................................................................28

*Cost Bros., Inc. v. Travelers Indem. Co.*,
    760 F.2d 58 (3d Cir. 1985)..................................................................................13

*Doe v Trustees of Boston Coll.*,
    942 F3d 527 (1st Cir 2019) .................................................................................29

*E.E.O.C. v. Hiram Walker Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ..............................................................................28

*Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*,
    46 F. Supp. 3d 327 (S.D.N.Y. 2014)...................................................................20

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
    156 F.3d 310 (2d Cir. 1998)................................................................................16

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr*,
    S.A., 533 F.3d 1349 (11th Cir. 2008) .................................................................22

*Garcia v Google, Inc.*,
    786 F3d 733 (9th Cir 2015) ................................................................................29

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
    458 U.S. 375 (1982)............................................................................................28

*Gonzalez v Governor of Georgia*,
    978 F3d 1266 (11th Cir 2020) ............................................................................29

*Hewlett-Packard Co. v. Berg*,
    61 F.3d 101 (1st Cir. 1995).................................................................................13

*InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.*,
    166 F. Supp. 3d 463 (S.D.N.Y. 2016).................................................................14

*Island Creek Coal Sales Co. v. Gainesville*,
    729 F.2d 1046 (6th Cir. 1984) ............................................................................22

*Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*,
  Civil Action No. 05-0423, 2005 U.S. Dist. LEXIS 34969 (W.D. Pa. Dec. 22,
  2005) ...........................................................................................................................13, 15, 16

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi
  Negara*,
  364 F.3d 274 (5th Cir. 2004) ...........................................................................................27

*Landis v. North American Co.*,
  299 U.S. 248, 81 L. Ed. 153, 57 S. Ct. 163 (1936) ...........................................................13

*Metallgesellschaft A.G. v. M/V Capitan Constante*,
  790 F.2d 280 (2d Cir. 1986) ............................................................................................21

*In re Nat'l Credit Mgmt. Grp., L.L.C.*,
  21 F. Supp. 2d 424 (D.N.J. 1998) ....................................................................................32

*Nolu Plastics, Inc. v. Valu Eng'g, Inc.*,
  No. 04-4325, 2004 U.S. Dist. LEXIS 20416 (E.D. Pa. Oct. 12, 2004) ..................................24

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
  935 F.2d 1019 (9th Cir. 1991) ..........................................................................................22

*PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*,
  19 F.4th 308 (3d Cir. 2021) .............................................................................................20

*Polydefkis Corp. v. Transcon. Fertiliser Co.*,
  Civ. No. 95-0242, 1996 U.S. Dist. LEXIS 17405 (E.D. Pa. Nov. 26, 1996).........................22

*Publicis Commun. v. True N. Communs. Inc.*,
  206 F.3d 725 (7th Cir. 2000) ...........................................................................................22

*Reach Acad. for Boys & Girls, Inc. v. Del. Dep't of Educ.*,
  46 F. Supp. 3d 455 (D. Del. 2014)...............................................................................29, 30

*Roudachevski v All-American Care Ctrs., Inc.*,
  648 F3d 701 (8th Cir 2011) .............................................................................................29

*S. Seas Navigation, Ltd. v. Petroleos Mexicanos of Mexico City*,
  606 F. Supp. 692 (S.D.N.Y. 1985).....................................................................................22

*SEC v. Warren*,
  583 F.2d 115 (3d Cir. 1978)..............................................................................................18

*Steelworkers v. Enterprise Corp.*,
  363 U.S. 593 (1960)..........................................................................................................30

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010).................................................................................30

*Telcordia Tech, Inc. v. Telkom SA Ltd*,
   458 F.3d 172 (3d Cir. 2006)....................................................................12

*Thrivest Specialty Funding, LLC v. White*,
   No. 18-1877, 2019 U.S. Dist. LEXIS 205542 (E.D. Pa. July 1, 2019) ............................22, 23

*Univ. of Notre Dame (USA) in England v. TJAC Waterloo, LLC*,
   49 F.4th 13 (1st Cir. 2022).....................................................................20

*Utils., Inc. v. Blue Mt. Lake Assocs., L.P.*,
   121 F. App'x 947 (3d Cir. 2005) ...............................................................29

*Yahoo! Inc. v. Microsoft Corp.*,
   983 F. Supp. 2d 310 (S.D.N.Y. 2013)...........................................................22

*Yasuda Fire & Marine Ins. Co. of Eur. v. Cont'l Cas. Co.*,
   37 F.3d 345 (7th Cir. 1994) ..................................................................22

*Zeiler v. Deitsch*,
   500 F.3d 157 (2d Cir. 2007)...................................................................22

**Statutes**

9 U.S.C. § 202.................................................................................12

9 U.S.C. § 207.................................................................................14

**Rules**

Fed. R. Civ. Proc. 65(c) .......................................................................32

Respondent International Aero Engines, LLC ("IAE") submits this memorandum of law in opposition to Petitioner Go Airlines (India) Limited's ("GoFirst") Emergency Petition and Motion to Confirm Arbitration Award ("Petition") and in support of its motion to stay these proceedings.

## SUMMARY OF ARGUMENT

1.      GoFirst's Petition should be stayed until after the full merits tribunal in the underlying Arbitration ("Merits Tribunal") has completed its review of IAE's application to vacate, as provided for under Article VI of the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention").

2.      The awards should not be confirmed under Article V of the New York Convention because (i) they do not constitute final and binding enforceable "arbitral awards" under the Federal Arbitration Act and New York Convention; (ii) they violate clear public policies requiring due process and security for interim relief; and (iii) they exceed the Emergency Arbitrator's scope of authority.

## INTRODUCTION

This action should be stayed while the Merits Tribunal determines IAE's application to vacate the Award on the Claimant's Application for Interim Emergency Relief, *see* Petition, Ex. A (the "Interim Award") and the Award on Claimant's Application for Supplemental Emergency Interim Relief, *see* Petition, Ex. B ("Supplemental Award" and collectively, the "Interim Awards"), and confirmation of the Interim Awards should alternatively be denied recognition, because both Interim Awards do not constitute final and binding enforceable "arbitral awards" under the Federal Arbitration Act and the New York Convention and profoundly violate the most basic norms of fairness and justice.  Specifically, contrary to GoFirst's repeated assertions, the emergency arbitrator ("Emergency Arbitrator") issued only interim, and not final, awards and, in so doing, expressly declined to "go into the merits," noting only that he was "unable to conclude"

that the claims "are without merit."  To make matters worse, the arbitrator nevertheless granted mandatory preliminary injunctive relief and imposed extra-contractual obligations on IAE, ostensibly requiring IAE to send jet engines worth over ten million dollars each to a now-insolvent Indian airline, *with no security*, even though common sense, English law, and the emergency arbitration rules of the Singapore International Arbitration Center ("SIAC Rules") require it.

After the Emergency Arbitrator who issued these Interim Awards later rejected GoFirst's motion for supplemental relief, GoFirst ran to this Court, hoping to take advantage of its more limited purview of review, and claiming, as it did before the Emergency Arbitrator, that its petition must be considered immediately because GoFirst would go bankrupt if it did not.  Days later, GoFirst in fact did voluntarily file an insolvency petition in India, using its Petition to violate its contractual confidentiality obligations, as well as the confidentiality obligations imposed by the SIAC Rules.

Accordingly, while GoFirst seeks to portray itself as a victim in need of urgent legal redress from this Court, the reality is that GoFirst is an insolvent airline that materially breached its contractual obligations to IAE over several years by failing to pay many tens of millions of dollars that GoFirst unquestionably owes, and is now trying to avoid review of the Interim Awards in the confidential arbitral forum to which GoFirst contractually agreed.  Importantly, the full merits tribunal in the underlying Arbitration ("Merits Tribunal") is now constituted and will imminently review the Interim Awards *de novo* on the merits pursuant to IAE's vacatur application – as the SIAC Rules require – and ultimately will issue a final and binding award after a full arbitration proceeding.

GoFirst's misguided Petition should therefore be stayed under Article VI of New York Convention until after the Merits Tribunal has completed its review, which may result in the

Emergency Award being vacated.  Any other approach will waste judicial resources, time, money, and effort that is better spent in the arbitral forum that ultimately will resolve the entire dispute (including IAE's counterclaim for nonpayment of tens of millions of dollars).

Moreover, the Interim Awards cannot be confirmed under Article V of the New York Convention for a number of reasons.  First, they do not constitute final and binding enforceable "arbitral awards" under the Federal Arbitration Act and New York Convention.  Second, they violate clear public policies that require due process and security for interim relief.  Third, they exceed the Emergency Arbitrator's authority by dispensing his own brand of extra-contractual industrial justice.

Consequently, when the Court cuts through GoFirst's invective and hyperbole, it becomes abundantly clear that this action should be stayed while IAE's vacatur application to the Merits Tribunal is pending, or, alternatively, that confirmation of the Interim Awards must be denied.

## STATEMENT OF FACTS

### A.    Background of the Underlying Dispute in the Arbitration

The underlying dispute that led to the Arbitration currently pending before the Merits Tribunal ("Arbitration") arose out of a transaction that IAE, an aircraft engine manufacturer, entered into in 2012 with GoFirst, a now-insolvent "ultra-low cost" Indian airline.  Specifically, IAE and GoFirst entered into a series of contracts in 2012 relating to GoFirst's purchase of aircraft engines for Airbus 320neo aircraft that GoFirst was purchasing.  Petition, Ex. D [D.I. 2.5].

Two of those contracts are of particular relevance in the underlying Arbitration.  The first contract is the Engine Agreement dated February 14, 2012 ("Engine Agreement"). *See* Petition, Ex. C [D.I. 2.4].  In relevant part, the Engine Agreement set out the terms by which GoFirst would purchase from IAE engines for installation on certain Airbus A320neo aircraft that GoFirst separately had agreed to purchase directly from Airbus.  The second is the Fleet Management

Program Agreement, dated February 14, 2012 ("FMP Agreement").  The FMP Agreement set out the terms by which IAE would provide maintenance, repair and operation ("MRO") services for the engines that GoFirst was purchasing.  The FMP Agreement also set out payment terms pursuant to which GoFirst would pay for those MRO services, all of which GoFirst subsequently breached. *See* FMP Agreement, Art. 4.

Importantly, Section 6.8 of the FMP Agreement delineated the terms pursuant to which IAE agreed to help facilitate the provision of spare leased engines to GoFirst when GoFirst's own engines were undergoing MRO services and GoFirst lacked sufficient spares from its own fleet. GoFirst incorrectly claims in the Petition that Section 6.8 of the FMP Agreement requires IAE to "immediately provide a spare engine through its affiliated leasing companies . . . and/or through a third-party lessor, and dispatch it to GoFirst within 48 hours of its identification," when GoFirst needs engines.  Mot. Br. at 3-4.  But, Section 6.8 of the FMP Agreement actually provides that if GoFirst needed engines, and to the extent that it had satisfied certain preconditions (that GoFirst only intermittently ever met), IAE would identify and dispatch spare engines "through its affiliated engine company(ies)" within forty-eight hours, ***but***, *"[s]hould a Spare Engine not be available from [IAE's leasing companies], [IAE] will immediately begin making **reasonable efforts** to identify a suitable Spare Engine from a third-party lessor."  Id.* (emphasis added).

Accordingly, while GoFirst has repeatedly claimed in its Petition and in the Arbitration that it has an absolute and unqualified right to spare engines from IAE whenever it needs them, that is simply not what the FMP Agreement says.

Notably, the FMP Agreement contains multiple provisions that permit IAE to suspend performance if GoFirst breached, which GoFirst did several years ago by (among other breaches) failing to pay tens of millions of dollars that GoFirst still owes for MRO services that IAE

unquestionably performed.  *See* FMP Agreement § 6.6; *id.,* Attachment 10 §§ 1.6, 8.1.  Indeed, GoFirst's abject refusal to pay the sums it owes not only led to the current situation, but also gave rise to IAE's substantial counterclaim, which it has asserted in the Arbitration.  Additionally, GoFirst owes IAE's leasing affiliate tens of millions of dollars of unpaid, undisputed lease utilization charges, and has also defaulted on over $100 million in financing arrangements provided by another of IAE's affiliates.

While the merits of the underlying dispute must be decided in the confidential arbitration forum to which the Parties contractually agreed and are not relevant to this proceeding, several facts already raised by GoFirst are worth comment here.

First, GoFirst's claim that the engines provided by IAE caused its demise is unfounded. GoFirst's years-long failure to pay for the maintenance and lease charges it had contracted for led to the necessary suspension of MRO services.

Second, there is no basis for GoFirst's contention that IAE intended to cause GoFirst to fail. In fact, IAE and its affiliates carried GoFirst for years and provided substantial extra-contractual financial support and deferred payment arrangements to try and help GoFirst succeed, but GoFirst still could not do so.  *See* Interim Award ¶ 99(d).

Third, GoFirst is not a victim here, as it contends.  By July 2022, GoFirst had materially defaulted to the point that IAE was forced to issue GoFirst a Default Notice for significant amounts that GoFirst owed to IAE and its affiliates (inclusive of lease utilization amounts due under leases), over $40 million of which was due to IAE under the FMP Agreement. *See* Declaration of Brian Rostocki ("Rostocki Decl."), Ex. A.  Critically, the Default Notice informed GoFirst that IAE was suspending MRO services under the FMP Agreement due to its non-payment.  *Id.*  Consequently, after IAE suspended performance under the FMP Agreement for non-payment, and GoFirst failed

to cure, and *then* refused to negotiate a suitable recovery plan with IAE that included material payments, GoFirst was no longer was entitled to MRO services as it had forfeited MRO services through its non-payment.

All of these matters will ultimately be resolved by the Merits Tribunal, which is the only body entitled to decide the merits of this dispute.

**B.      GoFirst Initiates Arbitration and Emergency Proceedings**

While IAE continued to work with GoFirst for months after issuing the Default Notice to formulate a workable payment plan that would have permitted MRO services to resume, GoFirst persisted with a position that it must be allowed the benefit of IAE's services without paying for them. GoFirst then chose to commence the Arbitration on March 14, 2023. *See* Interim Award ¶¶ 8, 10. GoFirst also filed an emergency application ("Emergency Application") seeking interim relief, which falsely claimed that IAE had nearly bankrupted GoFirst by breaching certain provisions of the Parties' agreements. *Id.* ¶¶ 63(a), 187.

On March 16, 2023, SIAC appointed the Emergency Arbitrator. *Id.* ¶ 12. The Emergency Arbitrator gave IAE just six days to respond to the filing, and on March 22, 2023, IAE timely submitted its defense to the Emergency Application. IAE argued, among other things, that GoFirst was not entitled to any relief because GoFirst had materially breached the agreements in question by refusing to pay for services and had misread IAE's obligations under the relevant agreements in any event. *See generally, id.* ¶ 43-78.

On March 25, 2023, the Emergency Arbitrator held a five-hour hearing by videoconference on the Emergency Application from Singapore. *Id.* ¶ 15.

### C.      The Interim Award Grants Limited Relief to GoFirst

On March 30, 2023, the Interim Award was issued, which denied most of the relief sought in GoFirst's Emergency Application.   After devoting nearly 67 pages and 181 numbered paragraphs to a summary of the parties competing claims and defenses,[1] the Emergency Arbitrator expressly declined to make any meaningful assessment of the merits at the preliminary stage of the arbitration proceeding:

> **I do not propose to go into the merits of these claims and counterclaims.  Self-evidently, they are substantial.  Suffice it to say that, after a careful consideration of the Parties [sic] submissions I am unable to conclude on a prima facie basis that any of GoFirst's claims are without merit.  They require to be examined closely by the Tribunal when appointed and when it has had the benefit of full submissions and evidence.  They are a prima facie bona fide claims and counterclaims.**

Interim Award ¶ 186.

Thus, the Emergency Arbitrator did not require GoFirst to show ***any*** likelihood of success on the merits, expressly declined to make any merits findings, and expressly left those questions to the Merits Tribunal that will now review the Interim Awards (as well as resolve the overall dispute on the merits).  *Id.* ¶¶198, 199.[2]

Without considering any view on the merits, the Emergency Arbitrator then turned to the "balance of convenience," and concluded, "[t]here is a very real danger that GoFirst will go out of business unless I give some relief."  *Id.* ¶¶ 187, 198.  The Emergency Arbitrator then considered

---

[1] While GoFirst cites the Interim Award for its factual recitation, the section of the Interim Award to which GoFirst cites merely recites GoFirst's own submissions in the Emergency Arbitration.  *See* Mot. Br. at 3-5.  Consequently, GoFirst merely cites itself in this Petition, and not the Emergency Arbitrator, who expressly declined to make factual findings in the Interim Awards.  *See* Interim Award ¶ 186.

[2] Petitioner has nonetheless represented to this Court that "the arbitrator found that Pratt failed to perform its contractual obligations, including to provide serviceable aircraft engines on which GoFirst's airline business depends." Motion to Expedite at 1-2, citing Petitioner's Memorandum of Law at 7.  This is a bald misrepresentation of the Interim Award.

what relief he believed would stave off GoFirst's insolvency and promote its "financial rehabilitation" and ultimately ordered IAE to:

> a.  comply with and specifically perform its obligations under clause 6.8 of the FMP Agreement to 'support' GoFirst, to 'dispatch' Spare Engines to GoFirst, and, if no Spare Engines are available, to 'immediately begin making **_reasonable efforts_**' to locate a suitable Spare Leased Engine[s], from its affiliated leasing company PWEL and/or a third-party lessor;
>
> b.  take **_all reasonable steps_** to release and dispatch without delay to GoFirst at least 10 serviceable Spare Leased Engines within 28 days from this Award, and a further 10 Spare Leased Engines per month until December 2023; and
>
> c.  induct those 20 GTF Engines and Spare Leased Engines currently in its possession into the shop for repair, and collect from GoFirst and induct for repair those 44 unserviceable GTF and Spare Leased Engines that presently remain with GoFirst and to return those engines to GoFirst once repaired.

*Id.* ¶ 213(a)-(c) (emphasis added).

Incredibly, after expressly concluding that GoFirst was teetering on the edge of insolvency, the Emergency Arbitrator refused to require GoFirst to post any security for the interim relief that he ordered, but gave "the parties leave to apply in respect of those orders which I have made and will consider this question further if circumstances change." *Id.* ¶ 212. The Emergency Arbitrator also granted "leave to the parties to apply to me or the Tribunal when constituted if there are issues in relation to the implementation of this order." *Id.* ¶¶ 202; 213(e). These provisions make clear the intent of the Interim Award was that it be temporary and subject to modification under changed circumstances, and ultimately subject to the final arbitral award entered to be issued by the Merits Tribunal after a full arbitration proceeding; all of which is enshrined in the SIAC Rules in any event.

In recognition of the limited information and preliminary role he had, the Emergency Arbitrator deferred all remaining issues – including any consideration of the merits of the Parties'

claims – to the to the Merits Tribunal.  *See id.* ¶ 186; *id.* ¶ 207 ("I do not consider I should make any order in respect to shop visits.  This requires a decision by the Tribunal."); *id.* ¶ 208 ("In respect of GoFirst's application for interim payment . . . this is a matter for determination by the Tribunal."); *id.* ¶ 209 ("In respect to GoFirst's request for injunctive relief in respect of the conclusion of the Definitive Agreements . . . it can[] await the constitution of the Tribunal."); *id.* ¶ 210 ("The same applies to GoFirst's claim for an indemnity.  This can also wait for the constitution of the Tribunal.").

### D.   The Supplemental Award Rejected GoFirst's Attempts to Rewrite the Emergency Award

Following its issuance, IAE promptly took steps to comply with the Interim Award, immediately determining whether any Spare Leased Engines were available to dispatch from IAE, its affiliates or third parties, and scheduling inductions to perform MRO services for GoFirst's engines as MRO induction slots became available.  *See* Petition, Ex. J [D.I. 2.7 at 63].  IAE also informed GoFirst of the steps it was taking to comply with the Interim Award.  *Id.*[3]

Perhaps disappointed that it had not obtained the unconditional relief it desired and unsatisfied with IAE's efforts to comply with the Interim Award, on April 8, 2023, GoFirst applied to the Emergency Arbitrator for supplemental relief that sought to rewrite the Interim Award to delete its reasonableness standards.

Fifteen minutes prior to the Emergency Arbitrator's second hearing on GoFirst's requests, GoFirst further submitted new written demands for how it believed IAE should "comply" with the Interim Award.  *See* Supplemental Award ¶ 4.  GoFirst also remarkably sought to impose a $1.75

---

[3] Although IAE confirmed to GoFirst that it would comply with the Interim Award as required by the SIAC Rules, it expressly reserved all rights, including the right to seek vacatur or modification before the full Merits Tribunal.  *See, e.g.*, Petition, Ex. K [D.I. 2.8 at 12].

million daily penalty for every day after April 27, 2023 that IAE had not delivered it the number of engines GoFirst claimed is was entitled to.  *Id.*

The Emergency Arbitrator rejected virtually all of the relief that GoFirst requested and "considered it premature . . . to say that [IAE is] in breach of the Emergency Award."  *Id.* ¶ 9(c). The Emergency Arbitrator also rejected GoFirst's argument that he had power to impose a monetary penalty for non-compliance or that such a penalty would be appropriate, considering that GoFirst claimed it was on the "brink of insolvency."  *Id.* ¶ 9(a)-(b).

Addressing the "reasonable efforts" and "all reasonable steps" language under paragraphs 213(a) and 213(b) of the Emergency Award, the Emergency Arbitrator found that the Interim Award did ***not*** compel IAE "to perform . . . impossible act[s]" or "require [IAE] to breach contractual obligations which it has with other customers," and therefore rejected GoFirst's contention that the Interim Award granted GoFirst an unconditional right to ten engines a month (which is precisely what GoFirst has now argued to this Court, as well as in its insolvency filings, and to the press).  *Id.* ¶ 11.  Without deciding, the Emergency Arbitrator opined that:

> It *may* be that in considering how it is to comply with the Emergency Award, [IAE] may have to arrange for GoFirst to "jump the queue" *to the extent that to do so would be a management decision and would not otherwise breach a contractual obligation to other customers*. . . . At this stage, I do not propose to order the steps which GoFirst says [IAE] needs to take to comply with the Emergency Award.  *I think it is for [IAE] to determine how best it can comply with the Emergency Award*, bearing in mind what I have said above.

*Id.* ¶¶ 12-13 (emphases added).

IAE renewed its application for GoFirst to provide security for lease engines or MRO services to be provided under the Interim Award.  While the Emergency Arbitrator stated that he would "make no order at this time," he again noted that, "[i]f circumstances change and [IAE]

wishes to make a further application, it should set out the amount claimed and how this is made up." *Id.* ¶ 15(v).

The Supplemental Award only ordered IAE to answer certain questions posed by GoFirst in a letter to IAE dated April 6, 2023 so that GoFirst could further assess Pratt & Whitney's compliance with the Interim Award. *Id.* ¶ 15(i). IAE fully complied with this order by submitting a fulsome response to GoFirst's questions on April 22, 2023. *See* Petition, Ex. M [D.I. 2.8 at 20]. Contrary to GoFirst's argument, IAE's response does not illustrate its refusal to comply with the Awards, but rather sets forth evidence of its compliance with the Interim Awards. *Id.*

### E.    GoFirst Files this Petition in Delaware and for Insolvency in India

After IAE submitted its answers to GoFirst's questions, GoFirst sought no further clarification from IAE, and did not approach the Emergency Arbitrator for additional relief, presumably because GoFirst realized the Emergency Arbitrator would not give it what it wanted.

Instead, on April 28, 2023, GoFirst filed its Petition and attending Motion to Expedite in this Court.[4] Notably, as the Emergency Application did, the Petition and Motion to Expedite both claimed that without immediate relief from this Court, GoFirst would go bankrupt. *See, e.g.,* Motion to Expedite [D.I. 1 at 3] ("GoFirst's existence is in jeopardy; it may be required to file for bankruptcy protection and cease operations."); Mot. Br. at 18 ("[T]here is a significant risk that GoFirst will go out of business and be forced to declare bankruptcy."). Five days later, on May 2, 2023, and before formal service of process was affected on IAE, GoFirst in fact filed for bankruptcy protection before the National Company Law Tribunal ("NCLT") in Delhi, India. Rostocki Decl. ¶ 2. On May 10, 2023, the NCLT accepted GoFirst's insolvency petition, and

---

[4] Inexplicably, and despite the fact that its Motion to Expedite sought to significantly limit the time in which IAE had to respond to the Petition, counsel for GoFirst waited two full days before emailing an undocketed version of its application to IAE's counsel.

appointed an interim resolution professional to immediately oversee the operation of GoFirst. Rostocki Decl. ¶ 3. However, in the short time between GoFirst's application and the NCLT's order, GoFirst's position has deteriorated significantly. *Id.*, Ex. B; *id.,* Ex. C; *id.,* Ex. D.

On May 11, 2023, SIAC notified the parties that the full Merits Tribunal was now appointed and constituted. Upon receiving notice of the Merit Tribunal's constitution, IAE immediately filed an application with the Merits Tribunal seeking vacatur of the Interim Awards pursuant to Paragraph 10 of Schedule 1 of the SIAC Rules. *See Id.* ¶¶ 4-5.

## ARGUMENT

## I.   FAA CHAPTER 2 AND THE NEW YORK CONVENTION GOVERN THE PETITION

GoFirst's Petition is governed by Chapter 2 of the Federal Arbitration Act, which enables the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), because the Interim Awards (a) concern an international business transaction that was entered into by parties from different countries, (b) envision performance outside of the United States, and (c) were produced by an arbitration that is seated in Singapore. *See* 9 U.S.C. § 202 (setting forth the conditions for the New York Convention to apply).

The New York Convention gives enforcement courts broad discretion to stay enforcement proceedings when the award is being challenged before a competent authority that can vacate it, just as IAE is doing in this case. Specifically, Article VI of the New York Convention provides that "[i]f an application for the setting aside or suspension of the award has been made to a competent authority, the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award." N.Y. Conv., Art. VI; *see Telcordia Tech, Inc. v. Telkom SA Ltd*, 458 F.3d 172, 181 (3d Cir. 2006) (relating that an enforcement court may, in its discretion, adjourn confirmation to await the outcome of "an application for the setting aside or suspension of [an] award . . . to a competent authority"). In the

United States, enforcement courts also enjoy "the power to stay [enforcement] proceedings [which] is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Commonwealth Ins. Co. v. Underwriters, Inc*., 846 F.2d 196, 199 (3d Cir. 1988) (citing *Landis v. North American Co.*, 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936)); *Cost Bros., Inc. v. Travelers Indem. Co.,* 760 F.2d 58, 60 (3d Cir. 1985); *see also Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 106 (1st Cir. 1995) (affirming district court's ability to stay confirmation proceedings even where "circumstances outlined in Article VI d[id] not appear to exist"); *Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*, Civil Action No. 05-0423, 2005 U.S. Dist. LEXIS 34969, at *10 (W.D. Pa. Dec. 22, 2005) (staying confirmation proceedings under court's "inherent discretion *and* power granted under Article VI of the Convention" (emphasis added)).

In addition to providing the grounds upon which an enforcement court may stay confirmation of an award, the Federal Arbitration Act and New York Convention provide grounds to deny outright confirmation of certain arbitral awards. As a threshold matter, U.S. District Courts "lack authority to confirm arbitral awards that are not final awards," such as the Interim Awards at issue here, which are expressly subject to *de novo* review by the full Merits Tribunal under the SIAC Rules. *Banco de Seguros del Estado v. Mut. Marine Offices, Inc.,* 230 F. Supp. 2d 362, 367-68 (S.D.N.Y. 2002) (citing *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986)); *see* Art. 10, Sched. 1, SIAC Rules (stating that the merits "[t]ribunal may reconsider, modify or vacate any . . . Award issued by the Emergency Arbitrator," and relating that the merits "[t]ribunal is not bound by the reasons given by the Emergency Arbitrator").

Further, an arbitral award that is subject to the New York Convention may be refused recognition by an enforcement court like this one if any of the grounds stated in Article V of the New York Convention are satisfied. *See* 9 U.S.C. § 207 (relating that Article V of the New York

- 13 -

Convention sets forth the grounds for refusing to recognize or enforce a foreign arbitral award). Those grounds include situations where the award "contains decisions on matters beyond the scope of the submission to arbitration," is "not yet . . . binding on the parties," or violates "the public policy" of the enforcement court. N.Y. Conv., Arts. V.1(c), V.1(e); V.2(b).

## II.   ENFORCEMENT SHOULD BE STAYED WHILE THE MERITS TRIBUNAL CONSIDERS IAE'S APPLICATION TO VACATE THE AWARDS

This Court should stay these enforcement proceedings under Article VI of the New York Convention because an application has been made to a competent authority for the setting aside or suspension of the pending award at issue.  Such relief should be granted because the full Merits Tribunal in the underlying Arbitration, which is the body empowered under Article 10 of Schedule 1 of the SIAC Rules to "reconsider, modify or vacate" the "Award[s] issued by the Emergency Arbitrator," is presently considering an application to vacate those Interim Awards.

The full Merits Tribunal, which has been constituted as of May 11, 2023, now has an application before it that may well render the Awards a legal nullity, and it is in the interests of justice to allow the Merits Tribunal to do its job and consider IAE's vacatur application.  Allowing the full Merits Tribunal to review the Interim Awards *de novo* on a fuller record is particularly appropriate, because the Emergency Arbitrator expressly declined to consider the merits of any of the underlying claims and, in so doing, has issued an award beyond the scope of his authority. Indeed, enforcement courts routinely stay proceedings under circumstances such as this. *See, e.g., Caroleng Invs. Ltd. v. Bluestone Res., Inc.,* No. 1:20-cv-1793, 2021 U.S. Dist. LEXIS 86487, at *1 (D. Del. May 6, 2021) (Andrews, J.); *InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.,* 166 F. Supp. 3d 463 (S.D.N.Y. 2016); *Berkenhoff VmbH v. Global Trade Network, Inc.,* No. 1:11-CV-00475, 2012 U.S. Dist. LEXIS 11579, at *8 (S.D. Ohio Jan. 31, 2012); *Jorf Lasfar Energy Co., S.C.A.,* 2005 U.S. Dist. LEXIS 34969, at *7.

IAE's application to vacate the Interim Awards is based on many strong arguments.  First, the Interim Awards expressly refused to make any merits findings concerning any likelihood of success on the underlying dispute despite the prevailing standards for making an award for mandatory injunctive relief.  Second, the relief that the Emergency Arbitrator provided for in Paragraphs 213(b) and 213(c) of the Emergency Award is divorced from any contractual obligation to which IAE agreed, and is therefore invalid.  Third, the Interim Awards expressly refused to grant IAE any security for any of the valuable aircraft engines GoFirst seeks to obtain, which not only runs afoul of English law (the governing law of the contracts) and Article 11 of Schedule 1 to the SIAC Rules, but which is particularly indefensible now that GoFirst has voluntarily sought judicial insolvency protection. *See Alta Trading UK Ltd (formerly Arcadia Petroleum Ltd) and others v Bosworth and others* [2021] 4 WLR 72 at [17] (Rostocki Decl. Ex. E) (holding that the court should grant security if the respondent to the injunction could suffer a loss caused by the injunction, and there is a risk that the applicant for the injunction cannot satisfy an order for damages); Art. 11, Sched. 1 of SIAC Rules (stating that any award "may be conditioned on provision . . . of appropriate security").

Finally, while the apparent objective of the Interim Awards was to prevent GoFirst's insolvency, this can no longer be the basis for continuing relief given the changed circumstances of GoFirst's voluntary petition before the NCLT, despite IAE's compliance with the Award to date.  Moreover, given the state of GoFirst's fleet it is entirely unclear how the Interim Awards should now apply.  The Merits Tribunal will have no choice but to reassess what constitutes appropriate interim relief (if it finds that any relief at all is appropriate), and determine whether such relief should be modified and if GoFirst should be required to post security.  Consequently,

IAE's vacatur application has a very strong chance of succeeding, which favors staying these proceedings until such time as the full Merits Tribunal rules on that application.

Moreover, while the Third Circuit has not expressly determined the standard for issuing a stay under Article VI, several district courts in this Circuit have developed a list of factors to consider when evaluating a stay request.  Those factors include: (1) the general objectives of arbitration; (2) the status of the foreign proceedings; (3) the scrutiny the award will receive in the foreign proceeding; (4) the characteristics of the foreign proceeding; and (5) the balance of hardships to the parties.  *See Caroleng Invs. Ltd.,* 2021 U.S. Dist. LEXIS 86487, at *1 (citing *Europcar Italia, S.p.A. v. Maiellano Tours, Inc*., 156 F.3d 310, 317-318 (2d Cir. 1998)); *Jorf Lasfar Energy Co., S.C.A.,* 2005 U.S. Dist. LEXIS 34969, at *7. As shown below, IAE easily satisfies all of those factors.

### A.    Staying These Proceedings Is the Most Efficient and Economical Approach

"The general objectives of arbitration," include "the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *See Caroleng Invs. Ltd*., 2021 U.S. Dist. LEXIS 86487, at *3.  This factor favors granting the stay, because the full Merits Tribunal – the body best-placed to efficiently and economically resolve whether the Interim Awards should be vacated – has before it an application to vacate the awards, which it will review *de novo*. Conversely, asking this Court to expend judicial resources conducting a limited review that will seek to assess the validity of non-final awards that were produced in highly abbreviated proceedings conducted on an undeveloped factual record is nothing short of wasteful.  This is particularly true here, given the strong arguments that the Emergency Arbitrator's Interim Awards, which failed to assess the merits and were based solely on the Emergency Arbitrator's inability to

find that GoFirst did not make a "prima facie" case, should be vacated, and given that the Merits Tribunal will likely make a determination on vacatur in a few short weeks.

Indeed, the different standards of review that the full Merits Tribunal (*de novo* review) and this Court (limited review) can exercise produces a real risk of "inconsistent results that could lead to expensive and protracted future litigation." *Caroleng Invs. Ltd.*, 2021 U.S. Dist. LEXIS 86487, at *3; *see id.* at *7 (stating that where "a foreign court is going to give greater scrutiny under a less deferential standard of review, that means there is an increased likelihood the award will not hold up," and thus favors a stay); *see also id.* ("[W]here a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings."). Nor would it make any sense – from the standpoint of judicial efficiency – for this Court to consider confirming the Emergency Arbitrator's disputed awards, only to have the issue revisited soon thereafter when the Merits Tribunal has reached a decision on IAE's vacatur application.

**B.    The Status of the Merits Arbitration Favors a Stay**

After two months of jurisdiction under the Emergency Arbitrator, the full Merits Tribunal has been appointed in the underlying Arbitration as of May 11, 2023. The fact that the full Merits Tribunal is constituted and will soon consider IAE's immediate application to vacate the Interim Awards favors staying these proceedings. In short, the Merits Tribunal is not only the body best placed to conduct a full merits review of the Interim Awards, as it is the body to whom the Parties contractually delegated the obligation to resolve this dispute, but is also the body that can most expeditiously and economically do so, such that this Court's stay would likely be in place for likely

no more than a few weeks.  *See Caroleng Invs. Ltd.*, 2021 U.S. Dist. LEXIS 86487, at *6 (noting courts have found delays to confirmation due to stay within a year were reasonable).

### C.   The Interim Awards Will be Reviewed *De Novo* on the Merits by the Full Merits Tribunal

Unlike this Court, which can only perform a limited review of the Interim Awards with imperfect knowledge, the full Merits Tribunal can and will conduct a full *de novo* review of the Interim Awards on the merits.  It will therefore be able to take into account that GoFirst has been in material breach for years of the very agreements it seeks to enforce by failing to pay IAE millions of dollars that GoFirst unquestionably owes, and seems highly unlikely to repay now that it has voluntarily filed for bankruptcy.  The full Merits Tribunal will also consider whether GoFirst (or its insolvency Trustee) should have to provide any security for the hundreds of millions of dollars of engines it seeks.  The Court should allow the Merits Tribunal to assess all of these issues in the first instance and consider whether to vacate or otherwise make appropriate modifications in light of the parties' changed circumstances.  *Accord SEC v. Warren*, 583 F.2d 115, 120 (3d Cir. 1978) ("While changes in fact or in law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes.").

### D.   A Full Merits Review in the Forum to Which GoFirst Contractually Agreed Is Completely Appropriate

There is nothing unfair or improper about allowing the full, three-member Merits Tribunal to consider whether the Interim Awards should stand, particularly when that body will conduct a full merits review, with the benefit of the full factual record. The parties expressly agreed to this dispute resolution process – where each side would nominate one arbitrator and the two nominees would then together nominate the chair – when they entered into the contracts at issue here.  They

did not contract for a single arbitrator chosen by SIAC to fully resolve the parties' disputes, and indeed, Article 10 of Schedule 1 of the SIAC Rules expressly provides the right of review by the full Merits Tribual.  Consequently, the fourth factor also strongly favors a stay.

### E.   The Balance of Hardships Favors Staying These Proceedings

Finally, the balance of hardships overwhelmingly favors staying these proceedings.  IAE will be prejudiced by a limited review of the Interim Awards before this Court, whereas GoFirst will suffer no harm at all by having the same adjudicative body that will assess the merits of both Parties' claims determine on a full review whether the Interim Awards should stand.

Moreover, GoFirst's recent bankruptcy filing has radically changed the field of play in terms of GoFirst's need for relief and IAE's risk. The risks for IAE, which were high to begin with, have increased significantly since GoFirst's bankruptcy.  Under the circumstances, GoFirst likely will be unable to satisfy any damages that IAE would sustain through compliance with the Awards, and IAE presently has no security to draw against should this be the case. Moreover, GoFirst's voluntary petition to the NCLT has created significant uncertainty as to the continued operation of GoFirst's fleet (and therefore its need of engines) and allowing the Merits Tribunal to address these changed circumstances will not prejudice GoFirst.

All five factors considered by district courts in this Circuit unquestionably favor staying these proceedings until the application to vacate is resolved by the full Merits Tribunal.  A stay is not only proper, but the only judicious course of action.

## III.   THE COURT SHOULD REFUSE CONFIRMATION OF THE INTERIM AWARDS

If the Court declines to stay consideration of the Petition, the Court should refuse to confirm the Interim Awards under the bases enumerated in Article V of the New York Convention.

### A.   The Interim Awards are Not Final and Binding

Under the Federal Arbitration Act, which incorporates the New York Convention, federal courts lack jurisdiction to confirm arbitral awards which are not final. *See, e.g., Banco de Seguros del Estado,* 230 F. Supp. 2d at 367-68. Relatedly, Article V.1(e) of the New York Convention provides that a court may refuse recognition if the award "has not yet become binding on the parties." "[T]he New York Convention's textual requirement that a foreign arbitral award be 'binding' is 'conceptually indistinguishable' from the judicially constructed requirement that a domestic arbitral award be 'final' to be subject to judicial confirmation under the FAA." *See Univ. of Notre Dame (USA) in England v. TJAC Waterloo, LLC*, 49 F.4th 13, 16-17 (1st Cir. 2022).

"[A]n arbitration award is final if it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration, and it resolves them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 323 (3d Cir. 2021). "An arbitration award is not final if it reveals that the arbitrators have yet to resolve each issue that the parties have empowered the arbitrators to decide." *Id.* That said, some courts have determined that *certain* forms of interim arbitral can be confirmed, reasoning that an award that does not fully resolve the entire arbitration proceeding can still be considered final "if it resolves the rights and obligations of the parties definitively enough to preclude the need for further adjudication with respect to the issue submitted to arbitration." *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 46 F. Supp. 3d 327, 336 (S.D.N.Y. 2014); *see also Banco de Seguros del Estado,* 230 F. Supp. 2d at 368 (An interim ruling is not a final award if it "does not purport to resolve finally the issues submitted to [the arbitrators]."). However, the relief in interim awards that courts have confirmed as final are categorically different from the relief provided in the Interim Awards, which do not purport finally to resolve the issues submitted.

- 20 -

GoFirst's argument that the Interim Awards are final wrongly relies on *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986), which held that "an award which finally and definitely disposes of a separate independent claim may be confirmed although it does not dispose of all the claims that were submitted to arbitration."   GoFirst analogizes by asserting that "[t]he Awards fully resolved all issues related to the provision of Spare Leased Engines, and the induction, repair, and return of GoFirst's engines" and that "[t]he only issues that remain are those unrelated to [IAE's] provisions and supply of engines." Mot. Br. at 17. That reading of the Awards is astonishing and disingenuous, and wholly misrepresents to this Court the nature of the Arbitration proceedings thus far, where no merits findings whatsoever have been made, and the Interim Awards, by their own language, are subject to application for modification due to "changed circumstances."

GoFirst's own application to the Emergency Arbitrator described the relief it requested as "interim emergency relief," "pending further consideration of the underlying issues in the subsequent arbitration."   Interim Award ¶ 46.   The Emergency Arbitrator obviously did not "purport to resolve finally" the issues submitted to it, because he expressly stated that he made no findings as to the merits of GoFirst's claims.  *Id.* ¶ 186.  Moreover, the Emergency Arbitrator was clear that *none* of GoFirst's claims, including those that were the basis for the interim emergency relief, were fully resolved because they would "require to be examined closely by the Tribunal when appointed and when it has had the benefit of full submissions and evidence."  *Id.*

The Interim Awards are therefore categorically different from the award at issue in *Metallgesellschaft,* which fully resolved all claims in the arbitration proceeding other than respondent's counterclaim, and the other cases GoFirst cites.  In those cases, the arbitral awards at issue fully disposed of questions of liability and merits after full hearing, but had left open for

future resolution collateral matters, such as counterclaims or costs. *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (award "separately and fully dispos[ed] of separate claims" for accountings); *Yahoo! Inc. v. Microsoft Corp.*, 983 F. Supp. 2d 310, 314 (S.D.N.Y. 2013) (award issued "final permanent relief" after evidence "demonstrated . . . that breach . . . established irreparable harm); *Polydefkis Corp. v. Transcon. Fertiliser Co.*, Civ. No. 95-0242, 1996 U.S. Dist. LEXIS 17405, at *3 (E.D. Pa. Nov. 26, 1996) (award fully resolved respondent's liability on claimant's action but did not resolve counterclaim).

Moreover, the other interim awards that courts have confirmed as final before a full resolution of all issues on the merits that GoFirst cites are wholly distinguishable from the Interim Awards issued here. In each of those cases, the interim relief granted consisted of discrete orders either directing a party to complete a one-time action (such as placing accounts in escrow) or issuing prohibitory injunctions rooted in concrete contractual obligations. *See Publicis Commun. v. True N. Communs. Inc.*, 206 F.3d 725, 727 (7th Cir. 2000) (award ordered disclosure of tax information); *Yasuda Fire & Marine Ins. Co. of Eur. v. Cont'l Cas. Co.*, 37 F.3d 345, 346 (7th Cir. 1994) (award order posting of security); *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir. 1991) (award ordered funds committed to escrow); *Thrivest Specialty Funding, LLC v. White*, No. 18-1877, 2019 U.S. Dist. LEXIS 205542, at *1 n.2 (E.D. Pa. July 1, 2019) (same); *S. Seas Navigation, Ltd. v. Petroleos Mexicanos of Mexico City*, 606 F. Supp. 692, 693 (S.D.N.Y. 1985) (award ordered removal of notice of lien); *see also Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr*, S.A., 533 F.3d 1349, 1350–51 (11th Cir. 2008) (award prohibited respondent from filing lawsuits against petitioner); *Island Creek Coal Sales Co. v. Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984) (award prohibited termination of contract pending final award). Moreover, with the exception of *Thrivest,* all these cases confirmed awards

- 22 -

that were issued by the same arbitrators empowered to finally consider the parties' full claims on the merits.

By contrast, and extraordinarily, the Interim Awards contemplate ongoing mandatory relief provided by IAE to GoFirst for the duration of the Arbitration including by making "reasonable efforts" to source and provide spare leased engines; take "reasonable steps" to provide 10 spare leased engines a month until December 2023; and conduct MRO services (which involves months of work per engine to complete) on dozens of GoFirst's engines. *See* Interim Award ¶ 213. Moreover, the Interim Awards contemplate continued supervision and assessment by the Emergency Arbitrator and full Merits Tribunal. For example, the Interim Awards grant leave to the parties to apply to the Emergency Arbitrator and Merits Tribunal "in respect to the implementation" of the Interim Awards, including with regards to the issue of ordering GoFirst to provide security. *Id.* ¶¶ 212, 213(e); Supplemental Award ¶ 15(v).

The Supplemental Award confirms that the intention of the Emergency Arbitrator was to create a flexible regime capable of reassessment and amendment. It provides an advisory opinion on what action IAE "may" have to take "in considering how it is to comply with the [Interim] Award," and notes that: "*At this stage*, I do not propose to order the steps which GoFirst says [IAE] needs to take to comply with the [Interim] Award. I think it is for [IAE] to determine how best it can comply with the [Interim] Award, bearing in mind what I have said above." Supplemental Award ¶¶ 12-13. In short, the Interim Awards are the opposite of final – they are utterly incapable of being reduced into U.S. court judgment. *See Biotek Servs., LLC v. Docs of Conn.*, LLC, No. 1:19-CV-01803-JPB, 2020 U.S. Dist. LEXIS 265525, at *6 (N.D. Ga. Jan. 17, 2020) (awards were not final where awards were "titled interim" and "it d[id] not appear that the Arbitrator intended for any of the awards to be final," and "made clear that his work was not complete."); *Nolu*

- 23 -

*Plastics, Inc. v. Valu Eng'g, Inc.*, No. 04-4325, 2004 U.S. Dist. LEXIS 20416, at *19 (E.D. Pa. Oct. 12, 2004) (refusing to confirm interim award "enjoining [respondents] from "engaging in conduct or spending . . . funds outside of the ordinary course of business" because it was "clearly an interlocutory ruling rather than a final award, as it does not evidence the arbitrator's intention to resolve all claims submitted in the demand for arbitration").

Nor would the Court be able to manage such a regime if the Awards were confirmed.  If confirmed, this Court or others would likely be called upon to second-guess whether IAE's actions taken to comply with the Interim Awards were "reasonable" and comport with the management discretion that the Supplemental Award confirmed IAE has in determining how to comply.  The Court would likewise need to conduct an analysis of contractual commitments to other customers to determine if, as the Supplemental Award acknowledges, IAE's contractual commitments supersede GoFirst's claim to engines.  And moreover, this would not be a one-off proceeding but would disputes would likely arise repeatedly over the entire period that the Interim Awards are in force (until December 2023).  *Cf. Am. Motor Inns, Inc. v. Holiday Inns, Inc.*, 521 F.2d 1230, 1249-50 (3d Cir. 1975) (rejecting the notion that "courts [should] be placed in the position of second-guessing business judgments as to what arrangements would or would not provide 'adequate' protection for legitimate commercial interests").  The fact that the Interim Awards requires this pliable analysis itself suggests that that Emergency Arbitrator did not intend to the Interim Awards to be final and binding, but rather contemplated further policing and revision within the Arbitration itself.

Moreover, the very nature of emergency arbitrations under the SIAC rules confirms that an interim award issued by an emergency arbitrator is in no sense "final."  As discussed, Rule 10 of Schedule 1 of the SIAC Rules 2016 provides that the Merits Tribunal may "reconsider, modify

or vacate" any interim order or award issued by the emergency arbitrator and is not bound by the reasons given by the emergency arbitrator. *See Chinmax Med. Sys. v. Alere San Diego, Inc.*, No. 10cv2467 WQH (NLS), 2011 U.S. Dist. LEXIS 57889, at *14 (S.D. Cal. May 27, 2011) (emergency award was not final when "[t]he rules provide that the full arbitration panel has the authority to 'reconsider, modify or vacate' the interim order; thus, the rules expressly retained jurisdiction over the issue for further consideration by the full panel.").[5]

For these reasons, the case bears closest resemblance to *Al Raha Grp. for Tech. Servs. v. PKL Servs.*, No. 1:18-cv-04194-AT, 2019 U.S. Dist. LEXIS 156249, at *5 (N.D. Ga. Sep. 5, 2019), where the court found that the award issued by an emergency arbitrator was not final where the "award [wa]s—on its face and in its substance—an interim award only meant to pause the crumbling relationship between the parties until such time as the full arbitration tribunal could be convened." The court looked to the intent of the emergency arbitrator to conclude that the "award itself was . . . an interim placeholder that did not purport to resolve finally any of the issues submitted to arbitration." *Id.* This is true of the Interim Awards at issue in this case as well, where the Emergency Arbitrator expressly noted that he was ordering relief he believed was "necessary to preserve the position under the Contracts, until a fully constituted Tribunal can decide the dispute between the Parties." Interim Award ¶ 198.

In fact, for very similar reasons, under Singapore law – which is the law of the seat of the arbitration and governs the arbitral proceedings at issue – the Interim Awards are not final "awards" at all, but instead are interim orders that are not even subject to vacatur by the

---

[5] *Chinmax*'s holding comports with the legislative intent of the framers of the New York Convention with regards to Article V.1(e).  UN Doc E/CONF.26/SR.17, United Nations Conference on International Commercial Arbitration Summary Record of the Seventeenth Meeting Held at Headquarters, New York, on Tuesday, 3 June 1958, at 2.45 Pm" (United Nations, September 12, 1958) at 3 ("The Working Party agreed that the award should not be enforced if under the applicable arbitral rules it was still subject to an appeal which had a suspensive effect.").  *See* Rostocki Decl., Ex. F.

Singaporean courts.  Under Singapore law, the key difference between a final "award" and a provisional order is the ability of the arbitral body to vary its decision.  Ordinarily, arbitrators are prevented from altering or revoking decisions once rendered, even those issued in preliminary matters.  *See* Foreign Law Declaration of Darius Chan ("Chan Declaration") ¶ 18 (citing International Arbitration Act 1994 ("IAA") § 19B(2)).  However, arbitrators are authorized to issue provisional orders "'intended to preserve a factual or legal situation so as to safeguard rights the recognition of which is sought from the tribunal having jurisdiction as to the substance of the case,' 'do not definitively or finally dispose of either a preliminary issue or a claim in an arbitration,' and are 'inherently capable of being varied in due course.'" *Id.* ¶ 21 (citing *PT Perusahaan Gas Negara (Persero) TBK v CRW Joint Operation* [2015] 4 SLR 364 at [49]-[50] (Rostocki Decl. Ex. G).

In *PT Pukuafu Indah et al. v Newmont Indonesia Ltd et al.* [2012] 4 SLR 1157(Rostocki Decl. Ex. H), the Singapore High Court considered whether an arbitral order was final for the purposes of considering whether the order was ripe to be set aside, the court concluded that it was not, opining:

> Although the Order, which restrained the plaintiffs from continuing with the prosecution of the Indonesian Court proceedings, was the substantive relief sought by the defendants in the arbitration, it had only interim effect. It was intended to maintain the status quo until the Tribunal could hold a full hearing on the merits.

*See* Chan Declaration ¶¶ 28-29.

The Interim Awards convey the same intent here and thus are not final under Singapore law.  The Emergency Arbitrator expressly premised the ordered relief on the basis that he believed it was "necessary to preserve the position under the Contracts, until a fully constituted Tribunal can decide the disputes between the Parties."  Interim Award ¶ 198.  Moreover, the Interim Awards are inherently variable both because the Emergency Arbitrator expressly gave leave to the parties to apply to him or the Merits Tribunal with respect to implementation and because under Paragraph

10 of Schedule 1 of the SIAC Rule, the Merits Tribunal has full authority to reconsider, modify or vacate decisions by the Emergency Arbitrator.  *See* Chan Declaration ¶¶ 29-34. Singapore courts would therefore not consider the Interim Awards final awards.[6]

This Court should not contemplate confirming the Interim Awards as final when even the law that governs them would not, particularly when "[u]nder the New York Convention, an agreement specifying the place of the arbitration creates a presumption that the procedural law of that place applies to the arbitration." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 291 (5th Cir. 2004).

The court therefore lacks jurisdiction to recognize and confirm the Awards, and the Petition should be dismissed.

## B.      Confirmation Would Violate the Public Policy of the United States

The Court should decline to enforce the Interim Awards because those awards violate IAE's due process rights by ordering relief without any merits determinations and without adequate security.

Article V.2(b) of the New York Convention provides that recognition and enforcement of an arbitral award may be refused "if recognition and enforcement would be contrary to the public policy of" the country where enforcement is sought.  "[A] judgment that 'tends clearly' to undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property is against public policy." *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y*

---

[6] GoFirst notes that IAE has not applied to the Singapore courts to set aside the Awards, but this is because a vacatur applications to those courts would not be accepted because the Interim Awards are not final under Singapore law. It is also likely the reason why GoFirst has not sought to confirm the Interim Awards in Singapore to this point.

*Producción*, 832 F.3d 92, 106 (2d Cir. 2016).  This is a clear instance where public policy dictates against confirmation of the Interim Awards.

**(i)    The Awards Violate the IAE's Fundamental Due Process Rights By Ordering Onerous Relief with No Assessment of Liability**

In related circumstances, the Third Circuit has held that "[t]he public policy exception applies 'where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections' or where recognition would impinge severely a U.S. constitutional or statutory right."  *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 309 (3d Cir. 2013) (applying public policy exception to recognition of foreign bankruptcy proceedings under Chapter 15).

Here, the Awards violate the most fundamental of due process rights: that relief should not be awarded against a party for whom no determination of liability has been made.  *See Blissett v. Coughlin*, 66 F.3d 531, 535 (2d Cir. 1995) ("It is fundamental that damages may not be assessed against one who has not been found liable."); *E.E.O.C. v. Hiram Walker Sons, Inc.*, 768 F.2d 884, 892 (7th Cir. 1985) ("There can be no court-imposed remedy without a finding of liability."); *Bauer v. Salandy*, No. 3:18-cv-01293, 2021 U.S. Dist. LEXIS 8356, at *22 (M.D. Tenn. Jan. 15, 2021) ("A remedy can be ordered only against a defendant who is liable for it under the facts and the law."); *Castillo v. Cmty. Child Care Council, Inc.*, No. 17-cv-07243, 2019 U.S. Dist. LEXIS 108163, at *17 (N.D. Cal. June 27, 2019) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 399-401 (1982)) (Plaintiffs were not entitled to "damages or equitable and injunctive relief" from defendants "without a finding of liability against the[m].").

Even in the most urgent of circumstances, courts in this country do not forsake merits assessments before ordering relief against a party simply because the relief requested is interim, and they certainly do not do so intentionally or purposefully as the Emergency Arbitrator did in

- 28 -

the Interim Awards.  Indeed, the likelihood of success standard for evaluating the propriety of preliminary relief is widely considered *the most important* factor in determining whether a court may grant relief at all.  *See, e.g., Gonzalez v Governor of Georgia,* 978 F3d 1266, 1271, n. 12 (11th Cir 2020) ("A substantial likelihood of success . . . is 'generally the most important of the four factors."); *Garcia v Google, Inc.,* 786 F3d 733, 740 (9th Cir 2015) ("The first factor . . . is the most important—likely success on the merits."); *Aamer v. Obama,* 742 F.3d 1023, 1038 (D.C. Cir. 2014) ("We begin with the first and most important factor: whether petitioners have established a likelihood of success on the merits."); *Doe v Trustees of Boston Coll.,* 942 F3d 527, 533 (1st Cir 2019) ("[S]howing of a likelihood of success on the merits is the most important of the four preliminary injunction factors."); *Roudachevski v All-American Care Ctrs., Inc.,* 648 F3d 701, 706 (8th Cir 2011) ("Success on the merits has been referred to as the most important of the four factors.").

For good reason, courts in the United States stringently require claimants to make an even stronger showing on the merits when the relief sought is a mandatory injunction or specific performance under a contract.  *See, e.g., Utils., Inc. v. Blue Mt. Lake Assocs., L.P.,* 121 F. App'x 947, 948 (3d Cir. 2005) ("Specific performance should only be granted where the facts clearly establish the plaintiff's right thereto, where no adequate remedy at law exists, and where justice requires it."); *Reach Acad. for Boys & Girls, Inc. v. Del. Dep't of Educ.,* 46 F. Supp. 3d 455, 470 (D. Del. 2014) ("[A] mandatory injunction [is] an even more extreme form of relief, which imposes a 'particularly heavy' burden on Plaintiffs to make a showing under each prong of the applicable legal standard.").

In the Interim Awards, the Emergency Arbitrator expressly did not "go into the merits of these claims and counterclaims," because "[s]elf-evidently, they are substantial."  Interim Award

¶ 186 (stating that evaluating the merits was simply too difficult at a preliminary stage on a limited record). But, remarkably, he still ruled that GoFirst was entitled to substantial mandatory interim relief on the basis that he could *not* find that GoFirst did *not* make a "prima facie" case on its claims. *Id.* Essentially, the Emergency Arbitrator saw that GoFirst was in dire financial trouble, and instead of assessing the merits of the claims GoFirst asserted, the arbitrator abandoned his responsibilities and "dispensed his own brand of industrial justice" to save a struggling airline (and declined to award any security to IAE on the same basis). *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 671-72 (2010) ("[W]hen an arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable. . . . In this case, we must conclude that what the arbitration panel did was simply to impose its own view of sound policy regarding class arbitration.") (internal citations omitted); *Coca-Cola Bottling v. Teamsters Local* 688, 959 F.2d 1438, 1440 (8th Cir. 1992) (citing *Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 597 (1960)) ("[An arbitrator] does not sit to dispense his own brand of industrial justice.").

In short, the Emergency Arbitrator never made any determination as to which party was responsible for GoFirst's situation, yet still ordered relief in an effort to save GoFirst at the expense of IAE, without any support in the underlying contract.[7] Before ordering IAE to perform the mandatory injunctions required in the Interim Award – relief that over the course of the Arbitration will likely require IAE to expend tens of millions in MRO services and potentially send hundreds of millions of dollars in aircraft engines to an insolvent entity – the Emergency Arbitrator was bound by basic notions of justice and fairness. He should have considered whether GoFirst could

---

[7] The Emergency Arbitrator even recited GoFirst's stunning argument in his Award: that the cost of the relief requested (potentially totaling hundreds of millions of dollars) "will be minimum, 'a rounding error'" for IAE. Interim Award ¶ 191.

establish at least that it was likely to succeed on the merits of its claims that IAE actually breached

any provision of the comprehensive and extensively negotiated contracts entered into by IAE and

GoFirst. Incredibly, in the Interim Awards, the Emergency Arbitrator himself admits that he did

not even attempt to do so. This Court should not be made an accomplice to this severe dereliction

of duty by confirming the Interim Awards.[8]

### (ii)     The Award Violates the Public Policy of Requiring Claimants to Bond Preliminary Relief

Adding insult to injury, the Interim Awards decline to order GoFirst to provide *any* security

to protect IAE against damages from the Awards if and when the relief is vacated or eventually

superseded by a final Award from the Merits Tribunal after the full arbitration, *even though*

GoFirst's entire application was predicated on the notion that it would imminently be insolvent.

That ruling violates this country's clear public policy of requiring security in exchange for interim

relief, because it is essential to protecting the encumbered party's rights. Indeed, courts issue

preliminary relief on the understanding that they have not fully assessed the merits of a case and

acknowledge the possibility that the decision to order relief may be incorrect and may cause serious

injury. *See Instant Air Freight, 882* F.2d at 805-06 n. 9 (3d Cir. 1989). This threat of injury is

great considering that "because of attenuated procedure, an interlocutory order has a higher than

usual chance of being wrong." *Id.* at 804; *see also In re Nat'l Credit Mgmt. Grp*., L.L.C., 21 F.

---

[8] GoFirst argues that the Interim Awards "fully resolved all issues related to the provision of Spare Leased Engines, and the induction, repair, and return of GoFirst," Mot. Br. at 16-17. This is incorrect for the reasons discussed, *supra*, but to the extent GoFirst is correct in this reading of the Awards, the Court would have an additional basis under Article V to refuse recognition. In such a case, IAE would have been denied its ability to present its full case on the merits of whether GoFirst is entitled to this relief because the expedited nature of an emergency application before SIAC necessarily prevents the parties from making a fulsome case, and in any event, the Emergency Arbitrator admitted he did not consider the factual record before him. *See* New York Convention, Article V(1)(b). Moreover, the parties' arbitration agreements expressly provide that the parties will resolve their disputes in arbitration under the SIAC Rules before an arbitration panel *consisting of three arbitrators* appointed with the parties' input. *See, e.g.,* FMP Agreement, Attachment 10 § 14. Had the Emergency Arbitrator fully resolved all the issues before him, he would be denying the parties their right to resolve their disputes in the manner they mutually contracted for.

Supp. 2d 424, 464 (D.N.J. 1998) (citing *Clark v. K-Mart*, 979 F.2d 965, 968 (3d Cir. 1992)) (Since interim relief is granted "before a trial is held on the merits, the possibility it was incorrectly imposed is a reality."). Thus, "important policies" require "provid[ing] a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight*, 882 F.2d at 804, 804 n.9; *see also* Fed. R. Civ. Proc. 65(c) (requiring movant to give security before court may issue preliminary injunction or temporary restraining order).

Here, it is indisputable that IAE should have been awarded security. First is the fact that the Emergency Arbitrator, expressly refused to "go into the merits" of GoFirst's claims, which dramatically increased the risk that IAE would be damaged by a wrongful injunction. Interim Award ¶ 186.

Second, GoFirst premised its entire Emergency Application on its financial instability and risk of insolvency. There was therefore enormous inherent risk that GoFirst would be unable to compensate IAE for a wrongful injunction should the Interim Awards be overturned. Now that GoFirst has in fact declared bankruptcy, IAE is all but certain to lack any remedy against the damages caused by the Interim Awards when the Merits Tribunal evaluates IAE's Application to Vacate and were it to conclude they were issued in error. The Court should not sanction GoFirst's effort to compel IAE to disburse millions of dollars in funds and assets to an insolvent entity that will never be able to reimburse them, all based on a flimsy Interim Award that contains no analysis of the merits whatsoever.

## C.     The Awards Contain Decisions on Matters Beyond the Scope of the Arbitration

The Court must also refuse to recognize the Interim Awards because the Emergency Arbitrator exceeded his authority by awarding extra-contractual relief to which GoFirst is not entitled.

Under Article V.1(c) of the New York Convention, a court may refuse to confirm an award upon "proof that . . . [t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration[.]"  Where an award grants relief "contrary to remedies provided in the contract" it goes "beyond the authority of the arbitrators under the submission." *Coast Trading Co. v. Pac. Molasses Co.*, 681 F.2d 1195, 1198 (9th Cir. 1982).

In GoFirst's application to the Emergency Arbitrator, it expressly sought "declaratory and injunctive relief that IAE comply with its obligations under clause 6.8 of the FMP Agreement to: (i) "support" GoFirst, to "dispatch" Spare Engines to GoFirst (and if no Spare Engines are available, to "immediately begin making reasonable efforts" to locate a suitable Spare Engine from a third-party lessor); (ii) release and dispatch without delay any Spare Engines "available" at the Shop as well as those GTF Engines sent for "Maintenance Services" under Attachment 10 to the FMP Agreement and now repaired; and (iii) induct any remaining unrepaired GTF Engines into the shop for repair."  Interim Award ¶ 201.

Thus, GoFirst purported to ground its request for relief under clause 6.8 of the FMP Agreement; however, that clause does not include any provisions that contemplate the relief sought (and granted) by the Emergency Arbitrator at paragraphs 213(b) and 213(c) of the Interim Award. Further, paragraph 213(a) imposes a different obligation on IAE that was not agreed by the parties when entering into the Clause 6.8 of the FMP Agreement.  Indeed, there is no contractual basis for these forms of relief at all, and neither the Emergency Arbitrator, nor GoFirst, has cited any basis within the agreements for these orders.

The arbitration agreements between the parties (which are identical across contracts) extends to "any disputes that may arise concerning this Agreement." *See, e.g.,* FMP Agreement,

Attachment 10 § 14. An order for performance of obligations that are not grounded in any contractual obligation whatsoever would therefore be outside the scope of the terms of submission to arbitration.

The Emergency Arbitrator therefore did not have the power and/or authority to order the reliefs granted in the Emergency Award.[9]

## **CONCLUSION**

For the reasons set out above, IAE respectfully requests that the Court grant its motion to stay or, in the alternative, dismiss GoFirst's Petition.


Dated: May 11, 2023                                    Respectfully submitted,

                                                        REED SMITH LLP

                                                        */s/ Brian M. Rostocki*
                                                        Brian M. Rostocki (No. 4599)
                                                        Anne M. Steadman (No. 6221)
                                                        1201 Market Street, Suite 1500
                                                        Wilmington, Delaware 19801
                                                        Telephone: (302) 778-7500
                                                        Facsimile: (302) 778-7575
                                                        brostocki@reedsmith.com
                                                        asteadman@reedsmith.com

                                                        *Counsel for Respondent International Aero Engines, LLC*

---

[9] During the pendency of the Merit Tribunal's review of IAE's application to vacate, IAE continues to comply with the Interim Awards. IAE expressly reserves all rights to challenge GoFirst's baseless assertions that IAE is not in compliance should the Court confirm the Interim Awards.