IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Go Airlines (India) Limited,<br><br>*Petitioner*,<br><br>v.<br><br>International Aero Engines, LLC, a Delaware Limited Liability Company,<br><br>*Respondent*. | C.A. No. 23-mc-249 (RGA) |

**DECLARATION OF COLIN LIEW**

1. I am an advocate and solicitor of the Supreme Court of Singapore and a non-practising solicitor of the Senior Courts of England and Wales.

2. I practice as an independent arbitrator and counsel, and have more than a decade's experience in international commercial disputes, including arbitration and arbitration-related litigation (e.g. stays in favour of arbitration, interim measures in support of arbitration and challenges to arbitral awards).

3. In the course of my practice, I have given expert evidence of Singapore's arbitration laws to the Hong Kong Court of First Instance. In addition, I have given expert evidence of Singapore's commercial and procedural laws to the United States District Court for the Southern District of New York (in an opinion which was substantially relied on by the District Court in granting summary judgment in *Fujian Shipping Co Ltd v OW Bunker Far East (S) Pte Ltd*, Case No 16-CV-401, subsequently affirmed on appeal by the Court of Appeals for the Second Circuit), the Supreme Court of New South Wales and the High Court of England and Wales.

4. I am also actively involved in law reform and academic initiatives concerning Singapore's arbitration laws, having co-authored two law reform reports (the recommendations in which were put to a public consultation by Singapore's Ministry of Law) and a chapter in a leading practitioner's text on arbitration. I attach my Curriculum Vitae as **Exhibit 1** to this declaration.

5. I have been asked by Go Airlines (India) Limited to respond to the Declaration of Associate Professor Darius Chan (the "**Chan Declaration**"), which opines that the

1

EA[1] and the SEA are not "awards" under Singapore law. I understand that International Aero Engines, LLC, seeks to rely on the Chan Declaration in support of the proposition that, as such, the EA and the SEA are not sufficiently final or binding for the purposes of being confirmed under the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "**New York Convention**").

## I. EXECUTIVE SUMMARY

6. In summary, while I agree with Associate Professor Chan that the EA and the SEA may not bear the technical *nomenclature* of an "award" under Part 2 of the IAA (Singapore's legislation governing international arbitration), as a matter of Singapore law, it is clear that under the provisions of the IAA, the EA and the SEA (like any other interim measures or relief granted by an emergency arbitrator) are sufficiently final or binding for the purposes of being enforced before the courts of Singapore, in the *same* manner as an "award".

7. Rather, the principal reason why the EA and the SEA are not classified as "awards" in the nomenclature and for the purposes of Part 2 of the IAA is – in furtherance of Singapore's pro-arbitration philosophy – to *insulate* them from being challenged before or set aside by a Singapore court. It was not the legislative intention to thereby prevent interim measures or relief issued by an emergency arbitrator in a Singapore-seated arbitration proceeding from being enforced outside Singapore.

8. I also briefly explain why the grant of an injunction by an arbitral tribunal (including an emergency arbitrator) without requiring security to be provided as a condition thereto is not contrary to Singapore law.

## II. BACKGROUND TO THE SINGAPORE LEGAL SYSTEM AND ITS PRO-ARBITRATION POLICIES

9. Singapore is a common law jurisdiction whose system of law is heavily based on English law. Written law takes the form of primary legislation enacted by Parliament (also referred to as statutes or Acts of Parliament). Unwritten or judge-made law takes the form of judicial decisions which may interpret legislation. In this way, the legal meaning or effect of legislation may be decided upon by the courts, though Parliament may enact statutes so as to change or otherwise influence the law.

---

[1] For convenience, unless otherwise stated, I adopt the abbreviated terms used in the Chan Declaration.

10. Before a statute is enacted as an Act of Parliament, it is first debated in Parliament in the form of a Bill, where the relevant Government minister responsible for sponsoring it often gives a speech explaining the legislative purpose and policy rationale of the proposed legislation. In interpreting a statutory provision, the Singapore courts often draw upon such speeches in order to ascertain the broader purpose of the Act in which it is contained, or the specific purpose of the provision in question.

11. The civil courts of Singapore are divided into the Supreme Court and the State Courts. However, in practice, most points of arbitration-related law are decided in the Supreme Court, which comprises:

    a. the Court of Appeal, which is the highest court in Singapore and whose decisions bind all lower courts; and

    b. the High Court, which from 2 January 2021 comprises: (i) the Appellate Division; and (ii) the General Division. The General Division also contains a specialist court, the Singapore International Commercial Court.

12. As is well-known, Singapore is a leading choice of seat for users of international arbitration, given its extremely pro-arbitration stance. The following extracts from the text co-authored by Associate Professor Chan are typical:

    a. "*As a result of the concerted efforts of policymakers and the legal profession over the past few decades, Singapore has solidified its position as one of the most popular seats for international arbitration in the world today*": Darius Chan, Paul Tan & Nicholas Poon, *The Law and Theory of International Commercial Arbitration in Singapore* (Academy Publishing, 2022), ¶1.1.

    b. "*Important to the growth of the industry has been the constant scrutiny and modification of the international arbitration laws by the Legislature and the courts to build and maintain Singapore's reputation as an arbitration-friendly jurisdiction*": Darius Chan, Paul Tan & Nicholas Poon, *The Law and Theory of International Commercial Arbitration in Singapore* (Academy Publishing, 2022), ¶1.15.

13. This pro-arbitration philosophy is important to a proper understanding of the IAA, and how decisions of emergency arbitrators fit within the legislative scheme.

### III. OVERVIEW OF THE IAA

14. As Associate Professor Chan explains,[2] under Singapore law, international arbitrations are governed by the IAA, which was enacted in 1994. I attach a copy of the IAA as **Exhibit 2** to this declaration.

15. The IAA has two principal purposes:

    a. Part 2 of the IAA gives the Model Law the force of law in Singapore (with the exception of Chapter VIII of the Model Law concerning the recognition and enforcement of awards, which was unnecessary in light of Part 3 of the IAA, discussed below);

    b. Part 3 of the IAA provides for the enforcement of foreign arbitral awards pursuant to the New York Convention.

16. As I explain below, both Parts 2 and Parts 3 are relevant to properly understanding how Singapore law approaches decisions of emergency arbitrators.

**A.** **"Awards" and "orders" as defined in Part 2 of the IAA**

17. Part 2 of the IAA applies to international arbitrations which are seated in Singapore and gives effect to the Model Law.

18. I agree with Associate Professor Chan that, *for the purposes* of Part 2 of the IAA, an "award" has been defined in s 2(1) as excluding interim orders which an arbitral tribunal may make pursuant to s 12.

19. The relevant portion of s 2(1) of the IAA provides:

    > **"Interpretation of this Part**
    >
    > **2.** – (1) In this Part, unless the context otherwise requires –
    >
    > …
    >
    > "award" means a decision of the arbitral tribunal on the substance of the dispute and includes any interim, interlocutory or partial award <u>but excludes any order or direction made under section 12</u>
    >
    > …" [emphasis added]

20. Section 12(1) of the IAA in turn relevantly provides:

---
[2] Chan Declaration, ¶12.

4

> **"Powers of arbitral tribunal**
>
> **12.** – (1) Without prejudice to the powers set out in any other provision of this Act and in the Model Law, an arbitral tribunal has powers to make orders or give directions to any party for –
>
> …
>
> (*d*) the preservation, interim custody or sale of any property which is or forms part of the subject matter of the dispute;
>
> (*e*) samples to be taken from, or any observation to be made of or experiment conducted upon, any property which is or forms part of the subject matter of the dispute;
>
> (*f*) the preservation and interim custody of any evidence for the purposes of the proceedings;
>
> (*g*) securing the amount in dispute;
>
> (*h*) ensuring that any award which may be made in the arbitral proceedings is not rendered ineffectual by the dissipation of assets by a party;
>
> (*i*) an interim injunction or any other interim measure;
>
> …"

21. In short, pursuant to s 12(1) of the IAA, an arbitral tribunal is empowered to grant interim or provisional measures or relief, which are binding on the parties (either by virtue of the express institutional rules under which the parties have agreed to arbitrate, or impliedly by virtue of the adjudicative authority which the parties have agreed to confer on the tribunal).

22. This is recognised by the IAA, which in s 12(6) provides that any such interim or provisional measures or relief are enforceable before a Singapore court:

    > "(6) All orders or directions made or given by an arbitral tribunal in the course of an arbitration are, by permission of the General Division of the High Court, enforceable in the same manner as if they were orders made by a court and, where permission is so given, judgment may be entered in terms of the order or direction."

23. Naturally, an award is also enforceable before a Singapore court, as provided for by s 19 of the IAA:

> "**Enforcement of awards**
>
> **19.** An award on an arbitration agreement may, by permission of the General Division of the High Court, be enforced in the same manner as a judgment or an order to the same effect and, where permission is so given, judgment may be entered in terms of the award."

24. As can be seen, s 12(6) and s 19 of the IAA provide that, as far as Singapore law is concerned, an "order" and an "award" issued by an arbitral tribunal are enforceable in exactly the same way (i.e. as an order or judgment of a Singapore court).

25. This has been explained by the Court of Appeal in a decision cited by Associate Professor Chan (though not in this context),[3] *Bloomberry Resorts and Hotels Inc v Global Gaming Philippines LLC* [2021] 2 SLR 1279 ("**Bloomberry**"). I attach a copy of *Bloomberry* as **Exhibit 3** to this declaration. The Court of Appeal stated (at ¶113):

> "Armed with an order or an award rendered by an arbitral tribunal, a party will, more often than not, take proactive enforcement steps to secure compliance. This enforcement can take numerous forms, such as a writ of seizure and sale, garnishee proceedings, the appointment of a receiver or an order for committal. The rationale for enforcement is easily understood. It will be apparent that the sanctity of orders and directions, and indeed the integrity of the arbitral process itself, may be considerably undermined should there be no way to ensure compliance. …[A]n arbitral tribunal does not have the same coercive powers of enforcement as the High Court (see also *Arbitration in Singapore: A Practical Guide* (Sundaresh Menon ed-in-chief) (Sweet & Maxwell, 2nd Ed, 2018) at para 13.091). The enforcement of arbitral awards, orders and directions is a matter squarely within the domain of the courts, and is statutorily provided for:
>
>> (a) An order or direction made by an arbitral tribunal, is enforceable in court pursuant to s 12(6) of the IAA… Section 12(6) appears to provide two methods by which a party can enforce an order or direction: (i) first, with leave of the court, in the same manner as orders of court; and (ii) second, by entering judgment in terms of the order or direction…
>>
>> (b) An arbitral award rendered by an arbitral tribunal is also enforceable in court, as is made clear by s 19 of the IAA … which… provide[s] that an arbitral award, foreign or domestic, may be "enforced in the same manner as a judgment or an order to the same effect and, where leave is

---
[3] Chan Declaration, ¶21.

so given, judgment may be entered in terms of the award"…"

26. I would add that, in practice, both "orders" and "awards" are – pursuant to s 12(6) and s 19 of the IAA respectively – routinely enforced in Singapore as orders or judgments of the Singapore courts and may attract sanctions for non-compliance.

**B.   The pro-arbitration policy reason for the exclusion of "orders" from the statutory definition of "award" in Part 2 of the IAA**

27. Associate Professor Chan takes the position that there is a distinction between "awards" and "orders" (as statutorily defined in s 2(1) of the IAA), on the basis that "awards" have the quality of finality in the sense that the arbitral tribunal may not (subject to narrow exceptions) revisit or revise an award it has made.[4]

28. Insofar as Associate Professor Chan is saying that "awards" as opposed to "orders" have *res judicata* effect, I agree with this: it follows from the statutory definition of an "award" in s 2(1) as being a decision of the arbitral tribunal "*on the substance of the dispute*" and is reflected in s 19B(1) of the IAA.[5]

29. By contrast, because interim or provisional measures or relief typically do not concern the substance of the dispute, they generally do not have preclusive effect. Thus, for instance, a tribunal can always vary an interim injunction it has previously granted in the light of subsequent changed circumstances, in a manner that is not possible as regards a merits award.

30. However, insofar as Associate Professor Chan is saying that "orders" are not thereby sufficiently final or binding under Singapore law for the purposes of enforcement, I disagree with this. As I have explained above, both "awards" and "orders" are enforceable in Singapore in the same manner as judgments or orders of a Singapore court.

31. Rather, s 2(1) of the IAA excludes provisional or interim remedies from its definition of "award" as part of Singapore's pro-arbitration policy choice to insulate a Singapore-seated arbitral tribunal's "orders" from being challenged or set aside before a Singapore court.

---

[4] Chan Declaration, ¶20.
[5] See also *PT First Media TBK (formerly known as PT Broadband Multimedia TBK) v Astro Nusantara International BV* [2014] 1 SLR 372, ¶133-142; *PT Perusahaan Gas Negara (Persero) TBK v CRW Joint Operation* [2015] 4 SLR 364, ¶105.

32. Thus, for instance, s 19B(4) of the IAA expressly provides that s 19B "*does not affect the right of a person to challenge the award by any available arbitral process of appeal or review*" or in accordance with the relevant provisions of the IAA and the Model Law (being s 24 and Article 34, respectively). These provisions enable the Singapore courts to review and set aside Singapore-seated arbitral awards on grounds of, amongst other things, a breach of natural justice or the agreed arbitral procedure.

33. However, since interim relief granted by an arbitral tribunal pursuant to s 12(1) of the IAA are not "awards" for the purposes of Part 2 of the IAA, they cannot be challenged before the Singapore courts in this way.

34. This was confirmed by the Singapore High Court in a decision cited by Associate Professor Chan, *PT Pukuafu Indah v Newmont Indonesia Ltd* [2012] 4 SLR 1157 ("**PT Pukuafu**"). I attach a copy of *PT Pukuafu* as **Exhibit 4** to this declaration.

35. Associate Professor Chan has cited the High Court's conclusion in *PT Pukuafu*, ¶19 that as the order in question (an anti-suit injunction) was made under s 12(1) of the IAA and thus excluded from the definition of "award" under s 2, the High Court had no jurisdiction to consider an application for the setting aside of the order under s 24 of the IAA and Article 34 of the Model Law, as those powers only extend to an "award".

36. However, the High Court then went on to explain the "*Policy behind the exclusion of interlocutory orders from the court's jurisdiction to set aside arbitral awards*", stating (at ¶21):

    > "Concerns over the exclusion of interlocutory orders from the definition of "award" usually stem from the perceived lack of enforceability in courts if these orders are not given the binding nature of an award. During the drafting stages of the International Arbitration Bill, the Law Reform Committee's sub-committee ("the sub-committee") on the Review of Arbitration Laws proposed that assistance should be available from the courts when interim orders are made by an arbitral tribunal so as to ensure that such orders are not mere paper awards. <u>Article 17 of the Model Law gives an arbitral tribunal powers to make orders on interim measures of protection but is silent on the status and enforceability of such orders. The sub-committee considered that the Model Law had left a lacuna in this aspect and that "such orders may also need to be given the status of awards in order to be enforceable"... Parliament responded by providing in s 12(6) of the IAA</u> that "[all] orders or directions made or given by an arbitral tribunal in the course of an arbitration shall, by leave of the High Court or a Judge thereof, be enforceable in the

8

same manner as if they were orders made by a court", <u>thus filling in the lacuna with a *sui generis* enforcement mechanism without broadening the definition of "award" to allow the court to set aside these orders.</u>" [emphasis added]

37. In other words, s 12(6) of the IAA (which, to reiterate, allows "orders" to be enforced in Singapore in exactly the same manner as "awards") was enacted to achieve the same result (as regards enforcement) which would otherwise have been accomplished by *including* "orders" within the statutory definition of "award" in s 2(1) of the IAA.

C. **"Arbitral award" as defined in Part 3 of the IAA includes "orders"**

38. Another example of Singapore's pro-arbitration policy of promoting the enforcement of interim or provisional measures or relief is found in Part 3 of the IAA which provides for the enforcement of foreign arbitral awards pursuant to the New York Convention.

39. Unlike the definition of "award" in s 2(1) of the IAA, s 27(1) of the IAA expressly *includes* interim or provisional measures or relief within the definition of "arbitral award" for the purposes of Part 3 of the IAA:

> "**Interpretation of this Part**
>
> **27.** – (1) In this Part, unless the context otherwise requires –
>
>> "arbitral award" has the meaning given by the Convention, <u>but also includes an order or a direction made or given by an arbitral tribunal in the course of an arbitration in respect of any of the matters set out in section 12(1)(*c*) to (*j*)</u>
>
> …" [emphasis added]

40. The underlined words were introduced by an amendment to the IAA in 2012, as a result of widespread recognition that certain types of interim measures ordered by foreign arbitral tribunals ought to be enforceable in Singapore under the New York Convention,[6] and in response to disquiet caused by foreign court decisions which had controversially declined to recognise such measures as being so enforceable.[7]

---

[6] Second Reading of the International Arbitration (Amendment) Bill, 9 April 2012, p 72 (Mr K Shanmugam, Minister for Law).
[7] *Singapore International Arbitration: Law & Practice* (David Joseph QC and David Foxton QC gen eds) (LexisNexis, 2nd Ed), ¶2.55-2.57.

41. Section 29(1) of the IAA then goes on to provide that, subject to Part 3 of the IAA, a foreign award (i.e. an "arbitral award" made in the territory of a New York Convention signatory other than Singapore) may be enforced in the General Division of the High Court "*in the same manner as an award of an arbitrator made in Singapore is enforceable under section 19*".

42. Part 3 of the IAA thus eschews the "awards" and "orders" nomenclature employed in Part 2 of the IAA.

43. Accordingly, for New York Convention purposes, regardless whether they concern the substance of the dispute, *all* decisions of a foreign-seated arbitral tribunal (including interim or provisional measures or relief) are enforceable in Singapore in precisely the *same* manner as interim or provisional measures or relief granted by a Singapore-seated tribunal ("orders", in the nomenclature of Part 2 of the IAA), which are in turn enforceable in precisely the *same* manner as decisions by a Singapore-seated tribunal on the substance of the dispute ("awards", in the nomenclature of Part 2 of the IAA).

44. This demonstrates that, notwithstanding that, for pro-arbitration policy reasons, Part 2 of the IAA draws a technical distinction between "awards" and "orders", Singapore law does not regard interim or provisional measures or relief granted by an arbitral tribunal as being insufficiently final or binding to be enforced: indeed, quite the opposite.

**IV.    DECISIONS OF EMERGENCY ARBITRATORS**

45. Emergency arbitration was first introduced in the arbitral rules of the International Centre for Dispute Resolution ("**ICDR**") in 2006, and it is now a well-established feature of the arbitral rules of many reputable arbitral institutions, providing parties the ability to obtain urgent interim or provisional measures or relief from an emergency arbitrator prior to the constitution of the arbitral tribunal (which may take several months).

**A.    Interim measures granted by an emergency arbitrator are binding on the parties under the SIAC Rules 2016**

46. The SIAC (which is Singapore's primary arbitral institute) was a relatively early adopter of emergency arbitration, introducing emergency arbitrator provisions in its arbitral rules in 2010. By agreeing to SIAC arbitration, the parties thereby expressly agree to the binding force and effect of interim measures granted by an emergency arbitrator. Thus, for instance, the parties agree:

a.  that, for the purposes of the SIAC Rules 2016, an "award" includes an award of an emergency arbitrator: SIAC Rules, ¶1.6;

b.  that an order or award by an emergency arbitrator "*shall be binding on the parties from the date it is made*": SIAC Rules, Schedule 1, ¶12; and

c.  to undertake to carry out the interim order or award of an emergency arbitrator "*immediately and without delay*": SIAC Rules, Schedule 1, ¶12.

47. As I explain below, the binding force and effect of such measures has been given express statutory and judicial backing under Singapore law.

**B.  Interim measures granted by Singapore-seated emergency arbitrators are enforceable before the Singapore courts in the same manner as "awards" under Part 2 of the IAA**

48. Associate Professor Chan considers that interim or provisional measures or relief granted by a Singapore-seated emergency arbitrator (such as the EA and the SEA) are in the nomenclature and for the purposes of Part 2 of the IAA "orders" rather than "awards".[8]

49. I agree with this but, as I have explained above, this does not mean that the decisions of an emergency arbitrator are not sufficiently final or binding to be enforceable as a matter of Singapore law. Rather, as with all "orders", they are enforceable before a Singapore court under s 12(6) of the IAA, in the same manner as an "award" would be under s 19 of the IAA.

50. In fact, in 2012, Part 2 of the IAA was amended for the express purpose of ensuring that interim or provisional measures or relief granted by a Singapore-seated emergency arbitrator would be enforceable before the Singapore courts in this way.

51. In particular, the definition of "arbitral tribunal" in s 2(1) of the IAA was amended to include "*an emergency arbitrator appointed pursuant to the rules of arbitration agreed to or adopted by the parties including the rules of arbitration of an institution or organisation*". In moving this amendment in Parliament, the Minister for Law explained[9]:

---

[8] Chan Declaration, ¶30.
[9] Second Reading of the International Arbitration (Amendment) Bill, 9 April 2012, p 66 (Mr K Shanmugam, Minister for Law).

> "… clause 2(a) amends the definition of an arbitral tribunal in section 2(1) to include emergency arbitrators. Emergency arbitrators provide urgent interim relief to parties before the arbitral tribunal is constituted. They are a fairly recent innovation in international arbitration. The SIAC was one of the first in the world to introduce them. Other arbitral institutions have now followed suit.
>
> With the amendments, there will be clear legislative support for emergency arbitrators. They will be able to exercise the full range of powers available to the tribunal under the Act. <u>Their awards will be enforceable in our courts in the same way as awards by any other tribunal</u>." [emphasis added]

52. The effect of this amendment is that, notwithstanding that for the purpose of Part 2 of the IAA, urgent interim relief granted by a Singapore-seated emergency arbitrator is (in the nomenclature of Part 2) an "order", it is enforceable under s 12(6) of the IAA as an order or judgment of the Singapore court (i.e. in the same manner that an "award" would be enforceable under s 19 of the IAA). In short, there is no doubt that the EA and SEA would under Singapore law be enforceable in Singapore.[10]

53. Equally, since it is not an "award" as statutorily defined in Part 2 of the IAA, such interim relief is insulated from being challenged before or set aside by the Singapore courts, in a manner to which an "award" is vulnerable.

54. However, as is clear, it was not the legislative intention in enacting these amendments to the IAA to thereby prevent interim measures or relief issued by an emergency arbitrator in a Singapore-seated arbitration proceeding from being enforced outside Singapore.

**C.  Interim measures granted by foreign-seated emergency arbitrators are enforceable before the Singapore courts as "arbitral awards" under Part 3 of the IAA**

55. Similarly, as explained above, the 2012 amendments to the IAA included amendments to the definition of "arbitral award" in s 27(1), to ensure that, for New York Convention purposes, interim or provisional measures or relief granted by foreign-seated tribunals would be enforceable before the Singapore courts.

56. However, until recently, it was an open question whether interim measures granted by a foreign-seated *emergency arbitrator* were enforceable in Singapore under the New

---

[10] Eddee Ng and Foo Zhi Wei, "The Emergency Arbitration Process under the SIAC Rules 2016: A Comparison with Court-ordered Interim Measures under s 12A of the International Arbitration Act 1994" [2023] SAL Prac 4, ¶3.

York Convention, as Part 3 of the IAA (even after the 2012 amendments) did not make explicit reference to emergency arbitrators.

57. In *CVG v CVH* [2022] SGHC 249 ("***CVG***"), the General Division of the High Court answered that question in the affirmative. I attach a copy of *CVG* as **Exhibit 5** to this declaration.

58. In *CVG*, the defendant sought to resist the enforcement of an interim award granted under the ICDR rules by an emergency arbitrator seated in Pennsylvania. Notwithstanding the lack of express reference to emergency arbitrators, the General Division accepted that the term "arbitral award" in s 27(1) of the IAA included awards by emergency arbitrators (at ¶28) which were binding on the parties despite being subject to review by the arbitral tribunal once constituted (¶40), and that such an award could accordingly be enforced under Part 3 of the IAA.[11]

59. In other words, even if the Arbitration was not seated in Singapore, the EA and the SEA would under Singapore law still be enforceable in Singapore under the New York Convention.

D. **Interim injunctions and security**

60. One of the most common types of interim measures sought from an emergency arbitrator is interim injunction. Indeed, I agree with Associate Professor Chan that the EA and the SEA are essentially interim injunctions.[12]

61. I also agree with Associate Professor Chan that, as Singapore is the seat of the Arbitration, the Arbitration is governed by Singapore law as the curial law or *lex arbitri*.[13] More specifically, the *lex arbitri* is generally regarded as the law governing the arbitral tribunal, though in *Paul Smith Ltd v H & S International Holding Inc* [1991] 1 Lloyd's Rep 127,[14] the court explained (at 130) that the *lex arbitri* includes the rules governing interim measures.

62. As I have explained above, s 12(1) of the IAA provides that an arbitral tribunal (including an emergency arbitrator) in a Singapore-seated arbitration has the power to grant interim injunctions. Under Singapore law, the arbitral tribunal has complete mastery over the exercise of such powers: *Bloomberry*, ¶109. That is, the exercise of

---

[11] On the facts, however, enforcement was denied on natural justice grounds because the defendant had been unable to present its case in the arbitration.
[12] Chan Declaration, ¶30, 34, 41.
[13] Chan Declaration, ¶12.
[14] This is an English case, but has been repeatedly followed by the Singapore courts.

such powers cannot be challenged or set aside before a Singapore court but, also, they are exercisable in the tribunal's discretion.

63. This is frequently mirrored in the institutional rules under which the parties have agreed to arbitrate. For instance, rule 30.1 of the SIAC Rules 2016 provides that the tribunal "*may*" at the request of a party grant "*an injunction or any other interim relief it deems appropriate*" and that the tribunal "*may*" order the requesting party to provide appropriate security in connection with the relief sought. Equally, the SIAC Rules 2016, Schedule 1, ¶11 provides that any interim order or award of an emergency arbitrator "*may*" be conditioned on the provision of appropriate security.[15]

64. Accordingly, the grant of an injunction by an arbitral tribunal (including an emergency arbitrator) without requiring security to be provided as a condition thereto is not contrary to Singapore law.

## V. CONCLUSION

65. Accordingly, to the extent that all Associate Professor Chan is saying is that, in the nomenclature and for the purposes of Part 2 of the IAA, the EA and the SEA should be termed "orders" rather than "awards", I agree.

66. However, insofar as Associate Professor Chan is saying or implying that, for that reason, the EA and the SEA are not sufficiently final or binding under Singapore law to be enforceable under the New York Convention, I disagree.

---

[15] This is similarly the position as a matter of Singapore court practice and civil procedure: a Singapore court has the power to grant an interim injunction and the discretion to require the applicant to furnish an undertaking in damages (and, if the court considers appropriate, to fortify that undertaking by furnishing a sufficient sum as security).

67. As I have explained, the principal reason for the distinction between an "award" and "order" under Part 2 of the IAA was to insulate the latter from being challenged before or set aside by a Singapore court. Notwithstanding this, it is clear that, under the IAA, the EA and the SEA are under Singapore law capable of enforcement before the courts of Singapore, in the same manner as any other award.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 15 May, 2023

_____
Colin Liew